## United Mine Workers of America, et al. v. Cromer.

(Decided June 19, 1914.)

### Appeal from Laurel Circuit Court.

1. Pleading—Voluntary Association—Not Suable as Such—Special Demurrer—Plea in Abatement.—While in the absence of statute, a voluntary association is not suable in the name of the association, yet that question must be raised by special demurrer

where the facts appear on the face of the petition, or by answer in the nature of a plea in abatement where such facts do not appear. By pleading to the merits without raising the question, the defense is waived.

2. Libel and Slander—Words Libelous Per Se.—All written words which hold the plaintiff up to contempt, hatred, scorn and ridicule, and which, by thus engendering an evil opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse in society, are libelous per se.

3. Libel and Slander—Words Libelous Per Se.—In an action for libel, held that the words, "detestable scabs and blacklegs" were libelous per se.

4. Appeal—Without Bill of Exceptions—Questions Reviewable.—In the absence of a bill of exceptions, the only question to be determined on appeal is whether or not the pleadings support the judgment.

WILLIAMS & JOHNSON for appellants.

CLAY & BOREING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Reid Cromer, brought this action against the United Mine Workers of America and G. B. Reed, to recover damages for libel. The jury returned a verdict in his favor for $500. Judgment was entered accordingly, and the defendants appeal.

(1) The first ground urged for reversal is that the United Mine Workers of America is not a corporation, but a voluntary association, and is not, therefore, suable in the name of the association.

It was charged in the petition that the United Mine Workers of America was a corporation. It filed an answer in whch it denied this fact, and in the same paragraph pleaded to the merits. In another paragraph it pleaded in substance that it was a voluntary association with a half million members, scattered over the United States, and it was impossible to give the names of all of its members, or of any considerable number thereof. The answer, however, did not constitute a plea in abatement. Thereupon plaintiff filed an amended petition alleging that the United Mine Workers of America was not a corporation, but an association, composed of several thousand members, all of whom resided outside of the State of Kentucky. The amended petition further alleged that said association published the paper in which the libelous matter was contained. Both defend-

ants filed a demurrer to the amended petition, which was overruled. Thereupon defendants filed an answer to the amended petition, denying that the United Mine Workers of America were the publishers of the United Mine Workers' Journal, in which libelous matter was contained, and denying that the association published the same at all. They also denied that the members of the United Mine Workers of America were non-residents of Kentucky.

As we have in this State no statute authorizing a suit against a voluntary association as such, it is doubtless true that such an association is not suable merely in the name of the association. Notwithstanding this fact, however, we take it that the question must be raised in some proper way; i. e., by special demurrer, where the facts appear on the face of the petition, or by answer in the nature of a plea in abatement, where such facts do not appear. Civil Code, Secs. 92 and 118; McAllister v. Savings Bank, 80 Ky., 684; Alvo v. Lawson, 17 B. Mon., 642; Rudd v. Deposit Bank, 105 Ky., 443; Ency. Pleading & Practice, Vol. 22, page 247.

In the present case the question was not raised by special demurrer or by answer by way of plea in abatement. On the contrary, both defendants answered to the merits without saving the question. That being true, the defense that the United Mine Workers of America were not suable in the name of the association was waived.

(2) The libel complained of was printed in the United Mine Workers' Journal, a newspaper published at Indianapolis, Indiana, under the auspices of the United Mine Workers of America, and is as follows:

"The strikebreakers in our little strike here are not practical men. They are here to defeat our purpose. They will not be desirable when we return to work, and will be ordered peremptorily by their employer to move on, go elsewhere, over to Indiana, Illinois, etc., to again illegitimately enjoy benefits and conditions established by union, good and honest men. Believing that it behooves us to keep you readers informed as to who these men are, we are concluding with a list of the names of the detestable scabs and black legs whom we want you to be continually on the lookout for."

In the list of names printed in the paper is the name of Reid Cromer. It appears from the petition that Reid

Cromer was a miner. There was a strike in the vicinity in which he was employed. He and his associates did not participate in this strike, but continued to work. It is further charged in the petition that the defendants, falsely and maliciously, and with the intent and purpose of injuring plaintiff in his calling and occupation as a coal miner, made the publication complained of. After setting out the publication, it was alleged that defendants, by the use of the words "detestable scabs and black legs," meant that plaintiff and his associates were detestable cheats and gamblers, and these words were so understood by their acquaintances and the public generally; that the effect of such publication was to bring them into the contempt, hatred, ridicule, disgrace and odium of their acquaintances and the public. It was further charged that the publication was intended to and did prevent plaintiff from obtaining employment in his occupation as a coal miner, and that he had been damaged in the sum of $3,000. In addition to a general denial of the allegations of the petition, defendants pleaded that the words "scabs and blacklegs," as used in the article complained of, are universally accepted among miners, and especially among the miners of Laurel County, and by all the persons who knew the plaintiff, as meaning that the plaintiff was a person who assisted in breaking strikes, and who accepted lower wages for his work than those who were known as "The United Mine Workers." The ordinary meaning of the word "blackleg" is a swindler, a dishonest gambler. It also means a strikebreaker. Webster's International Dictionary. In the latter sense it is used as a term of opprobrium by working men. It is well settled that all written words which hold the plaintiff up to contempt, hatred, scorn and ridicule, and which, by thus engendering an evil opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse in society, are libelous *per se*. Newell on Slander and Libel, page 43; Allen v. Wortham, 89 Ky., 485, 13 S. W., 73; Riley v. Lee, 88 Ky., 603, 11 S. W., 713.

The rule that words are to be understood *in mitiore censu* has been superseded. Words are now construed by the courts in their plain and popular sense. Under this rule, the words "detestable blackleg" are, we think, libelous *per se*. Where, of course, the words are used under such special circumstances as to show they have a meaning different from that ordinarily intended, it is for the jury to decide what is, in fact, their true construc-

tion.  Welsh v. Eakle, 7 J. J. Mar., 424.  In the present
case we cannot say, as a matter of law, that the word
"blackleg" was used merely in the sense of "strike-
breaker."  This case is before us without bill of excep-
tions.  It will, therefore, be presumed that the court
properly instructed the jury on all the issues involved;
and that the evidence was sufficient to sustain their ver-
dict.  That being true, the only remaining question is
whether or not the pleadings sustain the judgment.  As
the publication of the libel and its application to the
plaintiff are sufficiently averred, and as the words com-
plained of are on their face libelous *per se,* we conclude
that the petition is sufficient to sustain the judgment.

Judgment affirmed.