OVERTON, J.
 

 Plaintiff is a practicing lawyer in the city of New Orleans, and makes the practice of criminal law a specialty. In 1897 he was appointed
 
 to
 
 represent the district attorney in the recorders’ courts of that city, and filled the position for approximately a year, when he was elected judge of the second city criminal court, and held that office for about two years. In 1924, he became a candidate in the Democratic primary election for nomination to the office of judge of Section A of the criminal district court for the parish of Orleans.
 

 The New Orleans States, a newspaper owned by the Daily States Publishing Company, Limited, of which Robert Ewing was publisher, and J. Walker Ross, managing editor, was opposed to the candidacy of defendant, and during the course of the campaign published in its issues of September 3 and September 8, 1924, editorials which form the basis of this suit. The first of these editorials was entitled, “Impossible Selections,” and, so far as relates to plaintiff, reads as follows:
 

 “We have said that Mr. Otero possesses neither the ability nor the qualifications which, in .our judgment, should be found in a judge of our highest criminal court.
 

 “We repeat the statement, and with specifications.
 

 “Mr. Otero was at first a minor employee, later a full fledged associate of the late D. C. O’Malley. We have no wish to speak ill of the dead. But Mr. O’Malley for years, until his power was broken, was one of the most malefic influences about our criminal courts, constantly contributing to the defeat of the ends of justice.
 

 “Mr. Otero’s association with Mr. O’Malley is a bar against his elevation to a place so long and honorably held by the Bakers and Chretiens and Moisés and Romans and others of their class.
 

 “But there is even a more powerful reason for his rejection.
 

 “Mr. Otero received, it is charged, weekly payments from handbook and other operators who are fundamentally violators of the law. His defense of this was that he was a lawyer and entitled to receive such compensation. But Mr. Otero’s services largely consisted in the use of his political influence in getting protection for these violators of state and city statutes.
 

 “Mr. Otero’s relations with the handbook op
 
 *401
 
 erators, whether legitimately as a lawyer or otherwise, are not a recommendation in favor of his nomination' to exalted judicial position.
 

 “Some years ago Mr. Otero, during the administration of Woodrow Wilson, was a candidate for United States marshal.
 

 “Prior thereto, without any solicitation on our part, representations were made to this newspaper not only that Mr. Otero was collecting increasing toll from handbook operators and others engaged in illicit business, but that claiming to represent one of the city’s high officials, he had demanded a considerable sum of money to cover a fictitious deficit in campaign expenses.
 

 “This was confirmed to the States verbally and in writing by one of the operators on whom the demand was made.
 

 “These charges were reported by others than this newspaper to the authorities at Washington and an investigator was sent here from the Department of Justice to inquire into them.
 

 “Mr. Otero Was Not Appointed.
 

 “The fact that he was not obviously is against the raising of him by the Old Regular Organization to a position even more vitally important,, dealing as it does, with the lives and liberty of this community, than that of the Federal marshalship.
 

 * *******
 

 “Vote against these two undesirables” (referring to plaintiff and another candidate).
 

 The second editorial forming the basis Of this suit, in so far as it relates to plaintiff, was entitled “Vote and Yote Right,” and reads as follows:
 

 “They will pay the price—
 

 “If they vote to put on the bench of the criminal court Mr. ‘Dick’ Otero, for whom every citizen of the underworld is campaigning.
 

 “We have recited charges of the gravest character against Mr. Otero — that he was the recipient of weekly largesse from confessed lawbreakers, that he sought to ‘hold up’ these law breakers in the name of one of our leading politicians and that for years he was the agent and partner of Dominick O’Malley, notoriously the enemy of law and order.
 

 “Mr. Otero has not answered these charges.
 

 “Should a candidate who has let them stand against him be put .on the criminal bench to deal out justice between the decent element of this community, and the grafters, the gamblers and the law breakers generally?”
 

 Plaintiff was defeated in the election. After the election had been held, he brought the present suit against the Daily States Publishing Company, Limited, Robert Ewing, and J. Walker Ross, alleging that the charges in, the foregoing editorials against him are false, malicious, and libelous, and praying for judgment against defendants, in solido, in the sum of $172,000, of which $72,000 is for the loss of the salary of the office for which he was defeated, $50,000 for damages to his good name and reputation, and $50,000 for mortification and humiliation.
 

 Defendants filed an exception of no cause of action against this demand. The exception was sustained in the lower court, but, on appeal to this court, the judgment of the trial court was affirmed only in so far as relates to the demand for loss of salary, and in all other respects it was reversed, and the case remanded. Otero v. Ewing et al., 162 La. 453, 110 So. 648.
 

 Before the exception of no cause of action was sustained by the trial court, defendants filed their answer. In it they admit the publication of the editorials, aver that the charges made in them are true, and aver that the editorials were published for the purpose of maintaining the efficiency and honor of the bench by defeating an undesirable candidate. '
 

 The case was tried by a jury. The jury, after hearing considerable evidence, returned a verdict for defendants by a vote of ten to two. From the judgment based upon that verdict, plaintiff prosecutes this appeal.
 

 After the submission of the ease in this court, plaintiff filed a number of documents and certificates here, with -the end in view of contradicting and impeaching the evidence of one of defendants’ witnesses, and asks us to consider these documents and certificates in reaching a conclusion- in the ease. Defendants have filed a motion opposing the consideration of the documents and certificates mentioned, and pray that they be stricken from the record. The motion to-
 
 *403
 
 strike them from the record must be sustained, for since the jurisdiction of this court is only appellate, save in a few isolated instances, of which the present case is not one, it is without right to consider this additional evidence, but must confine itself, in deciding the case, to the evidence offered below. Constitution, art. 7, § 10; Bilich v. Mathe, 149 La. 484, 89 So. 628; Dalbey v. Continental Supply Co., 155 La. 113, 98 So. 859.
 

 Plaintiff has devoted a considerable part ■of his brief to the end of showing that the trial judge, by his rulings on the evidence, by occasional remarks made by him in ruling thereon, and by his charge, led the jury into error, and hence, that we should not attach any weight to the verdict of the jury in reaching a decision as to whether defendants have established their defense of justification. ■
 

 Our examination of plaintiff’s complaints, in these respects, fails to disclose any prejudicial error on the part of the trial judge in his rulings on the admissibility of the evidence, or to show that he made any improper or prejudicial remarks in making his rulings. With respect to the judge’s charge, it seems to state clearly and fairly the issue presented by the pleadings and to advise the jury fully as to the law applicable to the ease. We think that these complaints are not well founded.
 

 Proceeding to the merits of the case, it is proper to observe that the first paragraph of the editorial of September 3, 1924, which has reference alone to plaintiff, and which chárges that he has neither the ability nor the qualifications which should be found in a judge of the criminal court, is a mere general statement, which, if it were not for what follows, would not constitute libel, no matter how erroneous the statement might be, published as it was in a political campaign. However, as observed substantially by us, in our opinion on the exception of no cause of action, cited supra, when the editorial undertook to specify wherein plaintiff does not possess the qualifications which should be found in a judge of the criminal district court by saying that he was at first a minor employee, and later a full fledged associate of the late D. C. O’Malley, whom the editorial eharaetizes as having been one of the most malefic influences about our courts, by declaring that plaintiff received weekly payments from handbook and other operators, who fundamentally are violators of the law, for services which consisted largely in the use of his political influence in obtaining protection for them, and by stating that plaintiff, claiming to represent one of the city’s high officials, had demanded a considerable sum of money to cover a fictitious deficit in campaign expenses, the editorial is made to assume an entirely different aspect. In these respects, the editorial is clearly libelous, and those responsible for its publication are liable to plaintiff for the charges made in it, unless the truth of these charges has been substantially established. If the charges specified are established, then it is a matter of no consequence, so far as concerns this case, whether the then President of the United States was influenced in not appointing plaintiff to the marshalship of the Eastern District of Louisiana, because of their existence. In fact, this part of the editorial was obviously intended only to serve to convince others of the truth of the charges specified. As relates to the second editorial, that editorial is merely a repetition of the substance of the previous one, coupled with the statement that every citizen of the underworld is campaigning for plaintiff (a statement which is hardly actionable by itself), and with the argument that, since plaintiff had not answered the
 
 *405
 
 charges made against him, he should not be elevated to the bench.
 

 From the foregoing, it would appear that the parts of the editorials containing libelous matter, the truth of which defendants must establish in order to escape liability, are plaintiff’s alleged association with O’Malley; his alleged receipt of weekly payments from handbook and other operators for services which consisted largely in the use of his political influence to obtain protection for them; and that, claiming to represent one the city’s high officials, he demanded a considerable sum of money to cover a fictitious deficit in campaign expenses.
 

 As relates to the first of these charges, it appears that O’Malley enjoyed an unenviable reputation in New Orleans, especially in his work as a private detective about the courts, and, while it does not appear that plaintiff was ever a minor employee of O’Malley, yet it does appear that plaintiff was closely associated, through a law firm of which he was a member, with O’Malley.
 

 As relates to the charge concerning the receipt of weekly payments from handbook and other operators, it appears that John M. Abrams was operating a place, first known as the Smoke House and later as the Monarch Club. In the front part of this place there was a cigar stand. To the rear of this stand there was a room in which gambling occurred and bets were taken on horse races; Abrams operating there a handbook. Plaintiff was not unacquainted with the place. Abrams on one occasion complained to plaintiff about having trouble with the police, who, by reason of their repeated visits to his place, were interfering with his business. Plaintiff told Abrams that he thought that he could arrange the matter for him, and took Abrams to the office of the then superintendent of police, where a conversation occurred out of Abram’s presence. After this, Abrams was not troubled as much as previously. After this service was rendered, Abrams paid plaintiff at the rate of $10 a day, payable weekly, for the protection he thought plaintiff could render' him. This arrangement lasted for ten days or two weeks, when Abrams, because of a demand made upon him by plaintiff, terminated the arrangement.
 

 As relates to the charge that plaintiff demanded a large sum of money to cover a fictitious deficit in campaign expenses, it appears that he demanded of Abrams $1,500 for “the party,” meaning the Democratic party, to pay a deficit in a state campaign, when the Democratic nominee for Governor was opposed, which deficit, in fact, did not exist. Abrams, after taking the matter under advisement, and after consulting with the late Victor Mauberet and with Robert Ewing, one of the defendants herein, refused on the next day to comply with the demand. It was this incident that brought most of the information, that was later published, to defendants.
 

 While plaintiff denies most emphatically his association with O’Malley, through his firm or otherwise, and while he denies that he ever received or demanded from Abrams anything except what he was legally entitled to receive for fees for legal services performed or to be performed, yet we think that the preponderance of the evidence shows to the contrary.
 

 In a civil action for libel, the truth of the contents of the alleged libelous matter is a valid defense. Revised Statutes, § 3640; Smith v. Lyons, 142 La. 975, 77 So. 896. In making proof of the truth of the alleged libelous article, it is not necessary to prove the truth of every unimportant detail in it, but it is sufficient to prove that the charges therein contained are substantially true. 37
 
 *407
 
 C.J. p. 87, § 508; Addington v. Times Pub. Co., 138 La. 731, 70 So. 784.
 

 For tbe reasons assigned, tbe verdict and tbe judgment áppealed from are affirmed.
 

 ■ ST. PAUL and ROGERS, JJ., concur in the decree on the ground that the verdict of the jury is not shown to be manifestly erroneous.