# Hotel, Restaurant and Soda Fountain Employees Local Union No. 181 et al. v. Miller.

(Decided Jan. 25, 1938.)

(As Corrected on Denial of Rehearing March 22, 1938.)

GEORGE C. BURTON, GROVER G. SALES and GEORGE C. BURTON, II, for appellants.

TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellee, R. W. Miller, is engaged in the restaurant business in Louisville. He has twenty-five men and women employed, only one of whom belonged to a labor union. The appellant the Hotel, Restaurant and Soda Fountain Employees Local Union No. 181 is an affiliate of the American Federation of Labor. Its coappellant, George Reay, is its organizing representative. During his negotiations with Miller to unionize his restaurant, he and another were permitted to come there and solicit the employees to join the union. It appears that excepting the provision for a "closed shop," the proposed terms were agreeable to the ap-

pellee. There is a conflict in the testimony as to whether Miller opposed the movement. However, we think the weight of the evidence is that he left to the employees what action should be taken after having stated what he deemed to be the advantages and disadvantages of joining the union—perhaps emphasizing the disadvantages. During this period, in which several conferences were held, the employees suggested that they should organize an independent group, or what is commonly called a company union. Miller agreed and they effected such an organization. A written contract respecting their relations were made by the group and Miller. It may be said here that before this was done the only employee who had belonged to the appellant union was discharged by Miller. He contends that it was because of poor service and without knowledge of her membership, while the other side contends that it was because of her membership and activity in securing her fellow employees to join it. Miller definitely terminated negotiations with the appellants by saying that he had no right to bind his employees by the proposed contract. Thereupon the appellants began picketing the restaurant by carrying a placard or large white umbrella bearing the words, "This Restaurant is unfair to organized labor—Hotel, Restaurant and Soda Fountain Employees Local Union No. 181, affiliated with the American Federation of Labor." There is conflict in the evidence whether the pickets merely paraded in front of the business with this sign or did more, such as intercepting patrons and prospective patrons and making false and other statements calculated to divert business.

Miller filed this suit against the appellants to enjoin the picketing. He obtained a restraining order from Judge Mix, one of the judges of the Jefferson circuit court. The appellants, by their attorney, appeared before him and obtained a modification of the order. At the hearing on the motion to discharge the restraining order and to issue a temporary injunction, the chancellor indicated that he would grant an injunction on condition that the discharged union employee be reinstated. A tender of re-employment was made, but the cook refused to return. Deeming her action as voluntarily quitting work, the incident of her discharge may not be regarded as affecting subsequent developments.

Doubting that the wishes of the employees had been truly expressed and their organization freely formed, the court directed the master commissioner to take their vote, uninfluenced by either party. The commissioner held such an election off the employer's premises, using ballots prepared by himself and having them secretly cast. All but two of the employees voted. Those two were not at work that day. Those voting were unanimous for the independent organization or company union. The court then issued an injunction enjoining the defendants and their representatives from picketing or interfering with the plaintiff's business. The temporary injunction was later made permanent, and this appeal is prosecuted to obtain a reversal of the judgment.

The appellant union is an unincorporated association. Summons was served upon Reay as its business manager and chief officer in the county. On the day the case was heard by the chancellor, that defendant filed a motion to quash the sheriff's return on the restraining order, upon the ground that its president, secretary, and treasurer were in the county at the time and process should have been served upon one of them instead of Reay. It also filed a special demurrer to the petition for defect of party, in that as an unincorporated association it cannot be sued as such under its union name. See United Mine Workers v. Cromer, 159 Ky. 605, 167 S. W. 891; Diamond Block Coal Company v. United Mine Workers, 188 Ky. 477, 222 S. W. 1079. The defendant, however, waived the right to raise these questions and entered its appearance to the suit by having previously appeared and obtained a modification of the restraining order. Dean v. Brown, 261 Ky. 593, 88 S. W. (2d) 298.

The appellants place much confidence in Music Hall Theatre v. Moving Picture Machine Operators Local No. 165, 249 Ky. 639, 61 S. W. (2d) 283. In that case the operator of a theater had previously employed union labor and had refused to renew a bargaining contract with them. He employed a man who was not a member of any labor union but held a certificate of membership in a mere adjunct of a trade school, which was deceptively called a union. Thereupon the regular union began picketing the theater by having a man carry a sign with this inscription: "This theater does not em-

ploy Union Operator member of Local No. 165, M. P. M. O. & I. A. T. S. E. of U. S. A. & Can.'' We held that the circuit court had improperly issued an injunction against the peaceful picketing by carrying the banner, but had properly enjoined the making of false statements, the indulgence of violence, and interference with the business. We think the case is distinguishable. In reality there was a strike of the union employees for the purpose of securing a renewal of a contract and their reinstatement. They would not return to work otherwise; there was a bona fide dispute. Here there was no dispute between employer and employees; the purpose of the picketing was to establish this as a closed shop for the first time. The sign in the theater case was true. The statement on the banner in this case was not true, according to our views.

The case seems to be narrowed to this one question: Where the employees of a business or industry have organized and concluded a collective contract with the employer in relation to their wages, hours of labor, and working conditions, may a general labor union, to which none of the employees have belonged, picket the place of business?

With unanimity, the courts have held that employees have the right to organize and select their representatives for lawful purposes. This includes the fundamental right to contract collectively with the employer in order to obtain the maintenance or the advancement of wages, the procurement of reasonable hours of labor, and the betterment of working conditions. Saulsberry v. Coopers' International Union, 147 Ky. 170, 143 S. W. 1018, 39 L. R. A., N. S., 1203; Diamond Block Coal Company v. United Mine Workers, 188 Ky. 477, 222 S. W. 1079; Music Hall Theatre v. Moving Picture Machine Operators Local No. 165, supra. This right of unified action includes the privilege of selecting those who shall speak for the collection. As has been said by the Supreme Court:

> "Such collective action would be a mockery if representation were made futile by interference with freedom of choice."

National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U. S. 1, 57 S. Ct. 615, 622, 81 L. Ed. 893, 108 A. L. R. 1352, indirectly quoting Vir-

ginia Railroad Company v. System Federation, R. E. D., 300 U. S. 515, 57 S. Ct. 592, 81 L. Ed. 789.

Labor has become highly organized with central federated unions and active locals of great influence and power. Such is the appellant. But to say that in the matter of bargaining with employers for the advancement of the causes of labor these organizations are to be given exclusive recognition by the courts, it seems to us, would destroy the independence of any group of workers who may desire to choose for themselves whom they will have as their agents to treat with their employer, and violate their liberty of action in contracting with their employer. This right of self-organization for the purposes of securing the redress of grievances and the protection from economic abuse and other impositions is recognized by contemporary legislation and judicial decree. It is current history that the Railway Labor Act of 1926, c. 347, 44 Stat. 577, with the amendment of 1934, c. 691, 48 Stat. 1185, 45 U. S. C. A., secs. 151-163, and the National Labor Relations Act of 1935, commonly called the Wagner Act, 49 Stat. 449, c. 372, 29 U. S. C. A., sec. 151 et seq., were enacted by Congress at the instance and for the benefit of organized labor. Those laws, obviously, have no relation or application to the case at bar. But they and the opinions of the Supreme Court affirming their constitutionality and interpreting their provisions may be regarded as an authoritative expression of modern economic philosophy. The Wagner Act itself declares it to be the policy of the United States to encourage the practice and procedure of collective bargaining and to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." Section 1, 29 U. S. C. A., sec. 151.

Accordingly, section 7 of the Act, 29 U. S. C. A., sec. 157, provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

And section 9 (a), 29 U. S. C. A., sec. 159 (a) is in part this:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment; Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

Though that statute, as we have said, is in no respect applicable to this case, we are justified in accepting it as placing the legislative stamp of legitimacy upon company unions and the decisions of the Supreme Court as judicial sanction of such as authorized representatives of Labor. These declarations confirm the view that dealing with a company union is a fair labor practice. The principle involved is the same whether the business be great or small, the employees many or few.

As stated in National Labor Relations Board v. Jones & Laughlin Steel Corporation, supra, the Wagner Act, 29 U. S. C. A., sec. 151 et seq., imposes the duty upon an employer coming within its reach to confer and negotiate with such authorized representatives of his employees for the purpose of settling a labor dispute. Though there is no law making negotiations by the appellee Miller with any group obligatory, or imposing a duty upon him to deal with either the appellants or the independent organization, he has chosen to deal and to agree with the latter, and all parties are satisfied. By what right can it be said that a rival organization—even though extensive in its reach and strong in its operation—should be given sole recognition by the employer or by the courts to speak for and to bind those who do not belong to it and do not wish to belong to it? Under the modern concept that a company union may speak for Labor, it cannot be said that an employer who has dealt with it freely and fairly is unfair to organized labor. And if not unfair, then the picketing of his place of business by a rival group, to

its detriment (as was proven in this case), was illegal and the employer is entitled to the protection of the law.

We are not without specific judicial authority for this conclusion. In Culinary Workers' Union No. 331 v. Fuller, Tex. Civil App., 105 S. W. (2d) 295, there was involved (quite coincidental) a restaurant also employing twenty-five men and women. The conditions were thus described:

> "They [restaurant owners, appellees] have discharged no employee nor retained one objectionable to the other employees. The employees are satisfied with appellees' government, with their wages, which for waiters and waitresses exceeded the union scale, their working conditions, and the conditions of their employment. There was no contractual relation of any nature whatever between appellees and appellants, nor, on the record, between appellants and appellees' employees; appellees conceded to their employees the right to join the union. On the 19th of August, 1936, appellants, through their agents, asked appellees to sign a contract with them to 'unionize' their restaurant, and to employ only union labor. Appellees refused to sign the contract, and the next morning appellants established a picket line in front of appellees' place of business."

The placards, however, were different from those carried before Miller's restaurant. They appealed to nonunion employees to strike; to help increase wages; and not to patronize the restaurant. Upon authority of another case with similar facts—where the employer and employees were in entire harmony and the employer had discharged no one from his service—the judgment enjoining the labor union from picketing was affirmed. It is to be observed that the Texas statute, Vernon's Ann. Civil Statute, Arts. 5152, 5153, declaring it to be lawful for trade unions and other organizations and associations to induce or attempt to induce by peaceable and lawful means any person to accept any particular employment or to enter or refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged, i. e., to engage in peaceful picketing, was held inapplicable to the facts.

In Jordan's Wearing Apparel, Incorporated, v. Retail Sales Clerks Union of New Jersey, Newark Local, N. J. Ch., 193 A. 806, 807, one representing himself as the general manager of the Retail Sales Clerk Union advised an employer of labor that its employees had designated that union as their agent for collective bargaining, and requested a conference. During the ensuing negotiations, some of the employees went out on strike and established a system of picketing. In the meantime some of them joined a union affiliated with the American Federation of Labor, and the employer entered into an agreement with this union in behalf of its employees. The first-mentioned union had misrepresented its relation to the A. F. of L., although it claimed such connection because a superior body of which it was a member was or had been so affiliated. After the commencement of the suit, this group was chartered by and became affiliated with the Committee for Industrial Organization, otherwise known as C. I. O. The court enjoined its members from picketing and otherwise interfering with the employer's business after it had made a contract with the rival union. We may quote as pertinent to the case at bar:

"The employers apparently recognized unionization for collective bargaining, and to that end entered into contract with a union agreeable to them and chosen by some of their employees.

"If the purpose as declared by defendants originally was organization of the complainants' employees for collective bargaining in order to bring about betterment in conditions of hours, wages, and labor, that result has been accomplished. If the purpose was to compel an agreement with the defendant Union to the exclusion of any other union, the purpose of collective bargaining must be regarded as secondary, and to this we do not believe that even the defendants will subscribe. If it be the purpose of the defendants to close complainants' establishment to all union employees not members of its union (the closed shop), that purpose is unlawful. Certain it is that complainants are caught in an apparent strife between unions for supremacy. And here we pause to say that an employer cannot be compelled under existing law to enter into contract with any union."

474

We may repeat that there existed no industrial dispute. The employer and a legitimate labor union had come to terms. There was a binding contract. These facts, it seems to us, make inapt the decisions of the courts either affirming or denying that there may be lawful picketing of a business which refuses to unionize or against which no strike is in progress. Here the employer was not "unfair to organized labor." He had the right to be let alone. He was entitled to the law's protection from a third party's interference. The injunction was, therefore, properly granted.

The judgment is affirmed.

Whole court sitting.