PONDER, Justice.
 

 The trial court has correctly determined this controversy. In the reasons for judgment handed down by the trial court the facts in this case are accurately stated and the issues involved are correctly determined. We adopt the reasons for judgment handed down by the trial court as. ours in disposing of this appeal, viz:
 

 “Kemble K. Kennedy, an honor student; of the Louisiana State University, Law Department, brings this action in damages for $100,000 against the Item Company, Ltd. The cause of action is an alleged libelous, publication against the plaintiff filed in. the columns of that newspaper on March 3, 1935. The alleged libel, in substance, is this : There is a picture of Mr. Kennedy smiling and holding up his right hand. On top of the published picture appear the words: ‘Under Huey’s Bar He wins.’ Below the picture, there is an inscription as-follows:
 

 “ ‘K. K. Kennedy, successful on his second attempt to pass the state bar examinations, smiles broadly as he is sworn in at ceremonies Saturday before the State Supreme Court. Kennedy, charged with responsibility for scurrilous articles, appearing in the Whangdoodle, L. S. U. scandal, sheet, a couple of years ago, was saved from a penitentiary term by Senator Long; and Governor Allen.’
 

 “The record discloses that Mr. Kennedy was admitted to the Bar on March 2, 1935
 
 *1053
 
 and that his suit was filed on October 28, 1935. After the trial of certain preliminary exceptions, the answer of the defendant was filed on December 30, 1936. A motion to fix the case for trial was filed by the plaintiff on May 30, 1940.
 

 “It was with a prophetic eye that -the framers of our Constitution saw the dawn of a great transition period in the forms of government which had .theretofore attempted to order the affairs of men. By the adoption of the Federal Constitution, it may be said that they rang out the old and rang in a new era in the concepts and principles of government for a great people. In the first ten amendments to the Constitution of the United States, known as the ‘Bill of Rights,’ were embodied certain cherished guarantees and immunities, and among these will be found the guarantee of freedom of speech and liberty of the press. The enjoyment of the liberty thus insured, of course, was subject to certain well recognized restrictions, such as the citizen’s responsibility for slanderous utterances and libelous publications. It is therefore, the duty of the Judicial Branch of the Government to preserve intact these guarantees and immunities, and to prescribe bounds beyond which they must not be permitted to go.
 

 “As the alleged libel is said to have been committed at the place of publication of the newspaper in the city of New Orleans, we take it, that being alleged to have been committed within the borders of this State, the considered pronouncements of our Supreme Court on the several occasions they have dealt with the subject should be- the criterion in applying the law to the facts of this case..
 

 “In the suit of Otero v. Ewing, 165 La. 398 [115 So. 633, 636], being a libel suit, our Supreme Court said: ‘It is sufficient to prove that the charges therein contained are substantially true.’
 

 “Now the manifest error in this publication, — and we must take the facts as stated, — was an error as to the place of confinement. The plaintiff was sentenced to jail for criminal libel. He was to serve a term of one year. He was not to serve a term in the penitentiary. The plaintiff took an examination before the old Bar Association, the Louisiana State Bar Association, and he was not passed. There is no way of ascertaining from this record whether he was not passed because he was not learned in the law, or because of the unfortunate experience he had while he was at Louisiana State University, nor is that important to the issue here presented. On the second examination, he did pass, and that was held under the Bar Association established under the regime of the late Senator Huey P. Long, the State'Bar of Louisiana, Inc. The record does disclose that plaintiff was reprieved twice by Senator Long and did not serve the term, and that he was pardoned by Governor Allen. Taking the newspaper article as a whole, the Court is of the opinion that the charge was proven in substance.
 

 “A similar mistake was made by Mr. Price, the editor of the ‘Reveille,’ and, up
 
 *1055
 
 on demand, that editor retracted the article and made a written apology in the columns of the ‘Reveille.’ As the article under consideration here merely stated that Mr. Kennedy was ‘charged with responsibility for scurrilous articles appearing in the Whangdoodle, L. S. U. scandal sheet, * * *’ and did not state that he was charged with criminal libel, it is reasonable to believe that were the same demand made upon this defendant as was made upon the editor of the ‘Reveille,’ a retraction would have been made.
 

 “The second rule laid down by our Supreme Court in libel cases will be found in the matter of Tate v. Nicholson [Pub. Co.], 122 La. [472], 479 [47 So. 774, 776], The Supreme Court said:
 

 “ ‘In determining the question of the liability of the defendant, it is our duty to take into consideration all the circumstances of the case. We should give weight to every fact having a legal bearing on the publication. We must consider the occasion on which it is made, to ascertain how far, in view of that occasion and of everything that was then said by the defendant with reference to .the matters published, whether the publication should, as to its character, be held to be libelous or not. Our conclusion must be based upon the situation taken as a whole.’
 

 “If this Court knows what everybody knows, this Court should have knowledge that in 1935 there was no harmony between the newspapers and the ■ organization then in power in this State. The old piano of Louisiana was all out of tune. As between the newspapers and the late Senator Huey P. Long, there were charges and counter-charges ; criminations and counter-criminations. For a number of years, all the extravaganzas of bitter political campaigns and tempestuous conflicts on matters of public policy and administration of the State had been beaten on the keys and stamped on the pedals. The Dean of the L. S. U. Law School had resigned.
 

 “In the suit of Flanagan v. Nicholson Publishing Co., 137 La. 587. [68 So. 964, L.R.A.1917E, 510, Ann.Cas.1917B, 402], the defendant published an article con- ' cerning the plaintiff, who was a resident of this city and an international vice-president of a labor union, and who used his influence in Washington to assist San Francisco to obtain the Panama Fair as against New Orleans, stating he was a traitor and a dangerous and suspicious character and should be driven out of town and given the cold shoulder by all respectable Orleanians. The Court held that the article was privileged as a comment on a news matter of general public interest. In passing on the matter, the Court said:
 

 “ ‘Be the foregoing as it may, however, there can be no doubt in this case that the publications were made from no wrong motives, or ill will towards the plaintiff, but simply in furtherance of the campaign that was then being carried on; and that, if not entirely justified, they were privileged.
 

 
 *1057
 
 “ 'The privilege rests on two grounds:
 

 “'(1) It was within the province of the newspaper to comment on the incident as a matter of news and of general public interest.’
 

 “There can be no doubt that Mr. Kennedy, being a friend of those in charge of the administration of the State, unfortunately found himself in a reflected light, that while the newspaper, no doubt, had no ill-will towards Mr. Kennedy personally, he was drawn into the maelstrom raging over matters of public interest, and that the article was one dealing with a matter of special public interest. As such it was privileged. Courts cannot remedy all the slings and arrows of outrageous fortune. It is a safe hazard to say that if all those who felt they were aggrieved during that period had sought redress in Courts, the litigation resulting would have been as endless as the ambitions of European dictators and as limitless as the distance to one of our sister planets.
 

 “The facts and circumstances surrounding this matter may be regrettable. As the plaintiff states, they were matters in his early youth which he wants to forget. The Court was greatly impressed with the sincerity and the demeanor of the plaintiff in this suit. He, no doubt, should go far in his profession. But, in view of the law and the facts of this case, the Court has no other alternative than to dismiss the plaintiff’s demand.”
 

 For the reasons assigned the judgment is affirmed at appellant’s cost.