**PADUCAH NEWSPAPERS, Inc. et al.
v. WISE.**

Court of Appeals of Kentucky.
June 22, 1951.

As Modified on Denial of Rehearing
Dec. 21, 1951.

Writ of Certiorari Denied May 5, 1952.
See 72 S.Ct. 1035.

990

Waller, Threlkeld & Whitlow and Joseph S. Freeland, all of Paducah, for appellants.

Boyd, Boyd & Williams, Paducah, for appellee.

CLAY, Commissioner.

This is a libel suit against a newspaper and The Paducah Central Labor Union, including certain of its members, arising out of a paid, published advertisement that appellee's place of business was "unfair" to "members of labor." The jury returned a verdict for $5,000 against the union and its three representatives, and $1,000 against the newspaper. Part of these damages were obviously punitive.

Appellee operated a small restaurant in Paducah known as "Wise's Cream Castle." About the time he opened the place of business, he had a colored man cleaning up around the premises. To finish out the day he directed the man to paint a two foot strip around the door on the outside. This work was finished in less than an hour.

Apparently the painting job was offensive to the local painters' union. Yet appellee was not advised of it, nor did that union or appellant Central Labor Union (an organization of unions) contact appellee or become involved in any sort of a dispute with him. Almost a month and a half later the following publication appeared in heavy type in The Paducah Sun-Democrat, a newspaper having some 22,-000 subsribers:

NOTICE
MEMBERS OF LABOR
Wise's Cream Castle
6th and Jackson Sts.
and
Lawrence's Lunch Stand
Lovelaceville Road
ARE UNFAIR TO YOU
Paducah Central Labor Union

Appellee testified that as a result of this publication he suffered a substantial business loss.

The principal contention of appellants is that they were entitled to a directed verdict because: (1) to charge an employer with being unfair is not libelous; and (2) if it might constitute libel, the publication was true, and therefore not actionable.

■ (1) It is fundamental that words used with reference to another are ordinarily construed in their plain and popular sense. The definition of "unfair" is thus set forth in Webster's New International Dictionary: "Not fair in act or character; disingenuous; using or involving trick or artifice; dishonest; unjust; as, unfair methods; unfair competition."

■ As a general proposition, to charge a businessman with being "unfair" might well be libelous per se, for it is a derogatory term. See United Mine Workers of America v. Cromer, 159 Ky. 605, 167 S.W. 891. However, in recent years, the public has come to recognize that the term "unfair," when used by and with reference to particular labor unions or organizations, has a specialized meaning which is not as vicious as it might otherwise be. See Teller, Labor Disputes and Collective Bargaining, Vol. 1, Section 152. It has been said that the term when used by organized labor does not charge a moral shortcoming, or a want of business capacity or integrity, but means the person so designated is unfriendly to organized labor or does not recognize its rules and regulations. See Steffes v. Motion Picture Machine Operators Union of Minneapolis, 136 Minn. 200, 161 N.W. 524.

■ On the other hand, it has been recognized that a union may be enjoined from branding a person "unfair," even though the union feels itself aggrieved, where the latter has no just ground for making such charge. See Roraback v. Motion Picture Machine Operator's Union of Minneapolis, 140 Minn. 481, 168 N.W. 766, 169 N.W. 529, 3 A.L.R. 1290; Hughes v. Kansas City Motion Picture Machine Operators Local No. 170, 282 Mo. 304, 221 S.W. 95; and Wisconsin Employment Relations Board

v. Milk & Ice Cream Drivers & Dairy Employees Union, 238 Wis. 379, 299 N.W. 31.

It seems to be appellants' position in this case that a labor union and a newspaper have an unlimited license to charge an employer with being "unfair," and the latter has no remedy either at law or in equity. One of the principal cases they rely upon is Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58, wherein the United States Supreme Court held that a state court has no unrestricted right to enjoin picketing of a place of business conducted by the plaintiffs without the aid of employees. Apparently the decision was that the injunction (not set forth in the opinion) violated the right of freedom of speech guaranteed by the Federal Constitution. The opinion states, 320 U.S. at page 295, 64 S.Ct. at page 127: "* * * to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' or 'fascist' is not to falsify facts."

Appellants seize upon this decision and the quoted statement as establishing that the Fourteenth Amendment to the Federal Constitution protects a labor union's right to use the word "unfair" indiscriminately, and therefore it cannot be libelous. Whatever meaning the language of the opinion was meant to convey, it supports no such theory. If so strained it would violate the basic principle that libelous statements are *not* protected by the free speech provisions of the Constitution. 11 Am.Jur., Constitutional Law, Section 321; 16 C.J.S., Constitutional Law, § 213, page 637; Gitlow v. People of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; Montgomery Ward & Co., Inc., v. McGraw-Hill Pub. Co., Inc. 7 Cir., 146 F.2d 171; Kennedy v. Item Co., 197 La. 1050, 3 So.2d 175.

Without pinning it on the Fourteenth Amendment, appellants further argue that labor unions still have an inalienable right (emanating from some unknown source) to brand an employer "unfair." Such a theory seems supported by Blossom Dairy Co. v. International Brotherhood of Teamsters, 125 W.Va. 165, 23 S.E.2d 645. Though this was not a libel case, the majority of the Court held that the term had a special and peculiar meaning, and its use could not be enjoined even if no actual unfairness existed on the part of the employer. The Court stated, 23 S.E.2d at page 650: "Courts have come very generally to recognize that the word "unfair", as commonly used by labor unions, does not bear its primary and usual meaning, but has a well-known and well-understood peculiar and specific significance. This unique meaning of the word when so used is not capable of precise judicial determination, except negatively. It appears to be merely a word of disapprobation, or invective, loosely applied to any person or practice, which fails to meet the approval, for the time being, of the protesting labor organization."

There were two incisive, dispassionate dissenting opinions in that case. The dissenting Judges pointed out that neither law nor logic sustained the proposition that the use of the word "unfair" by organized labor is so unique as to be absolutely privileged. If the escapist reasoning followed by the majority in that case is sound, then labor unions have a free license to destroy a man's business by arbitrary, unreasonable, untruthful and malicious means. Surely, even in this day and time, the just prerogatives of labor do not require such special immunity.

We think it significant that most of the other cases relied upon by appellants were injunction suits wherein the issues were quite different from those arising in a libel action for damages. Perhaps more important is the fact that, running through those authorities, we find the use of the word "unfair" arose out of a realistic controversy between the employer and organized labor. Where no such dispute existed, the courts have not hesitated to protect the employer's rights. See Bolivian Panama Hat Co., Inc., v. Finkelstein, 127 Misc. 337, 215 N.Y.S. 399; Driggs Dairy Farms, Inc. v. Milk Drivers & Dairy Employees' Local Union No. 361, 49 Ohio App. 303, 197 N.E. 250.

In Emde v. San Joaquin County Central Labor Council, 23 Cal.2d 146, 143 P.2d 20, 150 A.L.R. 916, a libel case relied upon by appellants, the Court made the following

**992**

statement, 143 P.2d at page 28: "Such language cannot be made the basis of an action for libel *so long as it is occasioned, as in the present case, by the existence of a bona fide labor controversy.*" (Our italics.)

In Hotel, Restaurant & Soda Fountain Employees Local Union No. 181 v. Miller, 272 Ky. 466, 114 S.W.2d 501, we upheld an injunction issued to prevent the picketing of an employer's place of business. At the conclusion of that opinion we said, 272 Ky. at page 474, 114 S.W.2d at page 505: "We may repeat that there existed no industrial dispute. The employer and a legitimate labor union had come to terms. There was a binding contract. These facts, it seems to us, make inapt the decisions of the courts either affirming or denying that there may be lawful picketing of a business which refuses to unionize or against which no strike is in progress. Here the employer was not 'unfair to organized labor.' He had the right to be let alone. He was entitled to the law's protection from a third party's interference."

■ Appellants insist that the foregoing case has been effectively overruled in the more recent cases of Blanford v. Press Pub. Co., 286 Ky. 657, 151 S.W.2d 440; and Boyd v. Deena Artware, Inc., Ky., 239 S.W.2d 86. To the extent that the Miller case may be construed as declaring unlawful the picketing of a business by non-employees, it is no longer authoritative. That decision, however, is still sound law insofar as it declares that in the absence of a labor dispute, or other just cause, pickets may not publicly declare that the employer is " 'unfair to organized labor.' "

In the Blanford case non-employees advertised that a newspaper was not printed by union labor. This was a true statement of fact. We held that under the Fourteenth Amendment the guarantee of free speech authorized the dissemination of authentic information. The numerous cases cited and quoted from in that opinion emphasize that the *facts* depicting a dispute or objectionable practices may be presented to the public. The Deena Artware case likewise

confirmed the right of a labor union to picket and advertise their cause. One of the most significant aspects of this opinion, however, was our recognition that the union may be enjoined from verbally abusing workers by calling them scurrilous names. We said, 239 S.W.2d at page 89: " * * * the Fourteenth Amendment to the Constitution of the United States guarantees freedom of speech but does not guarantee one's right to abuse another, whether by speech or otherwise."

■ It is thus apparent, as stated earlier in this opinion, that the Fourteenth Amendment does not license libel. Its protective shield may be invoked only so long as labor unions or other individuals or organizations disseminate truthful information concerning an existing controversy.

The basis of appellee's claim in the present case is that appellants published an injurious false statement. Whether such statement be characterized as a fact or an opinion is immaterial. The wrong doing, if any, consisted of causing appellee injury by the malicious publication of words which falsely charge him with what may be considered reprehensible conduct. See Smith v. Pure Oil Co., 278 Ky. 430, 128 S.W.2d 931.

■ We do not decide that the publication in the present case was libelous as a matter of law. What we do declare is that labor unions, as others, may be civilly liable when they falsely charge an employer with being "unfair," where there exists no controversy or other circumstance which would reasonably justify the intentional damage of the employer's business. Therefore, the published statement was not privileged, and the determination of whether or not it constituted libel was properly submitted to the jury.

(2) Appellants next contend that if the statement could be libelous, it was in fact true, which would absolve them of liability. They cite a number of cases generally holding that the term "unfair" means only that a labor dispute exists, or that the employer has violated the rules and regulations of organized labor, or is conducting

his business in a manner the union considers unfavorable to its members. Therefore they maintain if anything offends a labor union, that organization, or some other organization, may truthfully publish the statement that the employer is "unfair." This doctrine has no limits, and would acknowledge the right of a labor union to destroy a person's business if the latter wore a tie which offended one of the former's members, or served such a member a bad cup of coffee Such could not be a reasonable rule.

The only justification for sustaining the right of labor unions to make "derogatory" statements about an employer must be that the union has reasonable grounds for objecting to the employer's conduct. Where there is an actual controversy or dispute, the employer at least is given a fair opportunity to avoid being branded as unfair, and such imputation may well be true. However, in the present case the employer committed an act which appeared quite innocent. No member of any union lodged any complaint, and appellee was given no opportunity to avoid the consequences of his inadvertent act. It may be that the painting job did in some respect offend organized labor. Yet the publication did not state what he had done or allege the reason why the union considered him "unfair."

■ Quite to the contrary, the union unqualifiedly accused appelle of being "unfair" to "members of labor." We do not express an opinion as to whether he was or not. Yet surely, it was proper to submit to a jury that very question; whether or not the statement concerning appellee, even in the sense is was used by the union and its representatives, was true. We cannot say as a matter of law, under the circumstances, that it was true; and there was substantial evidence upon which the jury could decide otherwise. Therefore, appellants were not entitled to a directed verdict.

■ Two other questions are raised. Appellant newspaper contends that the instructions were erroneous in submitting to the jury the question of whether or not the published statement was false rather than whether or not the union had the right to consider the plaintiff was unfair. This appellant offered several instructions to the effect that the jury must find for appellants if it believed the relationship between the Paducah Central Labor Union and the appellee was unsatisfactory, or if any members of that union had any grievance against appellee, or if appellant newspaper had reasonable grounds to believe the statement was true. These instructions simply asked a directed verdict for appellants. If they were proper, the jury could not have found for appellee because the very publication itself showed that the relationship between him and the union was unsatisfactory or that some member thereof had some grievance against him. Of course a belief by appellant newspaper that the statement was true is no defense. 33 Am. Jur., Libel and Slander, Section 118; Louisville Press Co. v. Tennelly, 105 Ky. 365, 49 S.W. 15. The controlling question in the case was whether or not the statement was true, and that issue was properly submitted to the jury.

■ The other appellants contend the damages were excessive because they were speculative. We have carefully reviewed appellee's testimony regarding his loss of business, and his calculations furnished the jury a sound basis for determining actual damages were suffered. The evidence also justified the award of punitive damages, which accounts for the substantial verdict.

We have discussed the principles involved in this litigation at length because we realize, as appellants urge, that it has important implications. We trust our analysis has made it abundantly clear that the frightful consequences envisioned will not materialize as a result of this decision. It does not, and the Court has not the slightest inclination to impair the full and important rights of labor or labor organizations, or to reflect adversely upon their actions. The acknowledged right of unions to peacefully picket, and to publicize their cause by newspaper advertisement or other-

994

wise, remains inviolate. Whether or not they abuse this privilege, however, should properly be left to the judgment of the twelve American citizens who sit on the jury, just the same as in similar lawsuits involving other members of society. All the courts may and should do, under our system, is to make certain that both parties are given a fair trial. We find no reversible error in the proceedings conducted by the lower court.

The judgment is affirmed.

STEWART, J., not sitting.

LATIMER, J., dissents on the ground that appellant newspaper acted in good faith and should not be subject to liability.