316 So.2d 837 (1975)
Howard ALLEMAN, Plaintiff and Appellant,
v.
VERMILION PUBLISHING CORPORATION et al., Defendants and Appellees.
No. 5090.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
*838 Broussard, Broussard & Moresi by Paul G. Moresi, Jr., Abbeville, for plaintiff and appellant.
Davidson, Meaux, Onebane & Donohoe by John G. Torian, II, Lafayette, Cooper & Sonnier by Charles R. Sonnier, Abbeville, Jumonville, Hartley, Plauche & Broadhurst by William Broadhurst, Lafayette, for defendants and appellees.
Before FRUGÉ, DOMENGEAUX, and WATSON, JJ.
DOMENGEAUX, Judge.
This action for damages arises out of alleged defamatory statements made by Norman L. Rogers and his wife in a letter which the Vermilion Publishing Corporation subsequently printed in its bi-weekly newspaper (the Abbeville Meridional) under a column entitled "Letters to the Editor". From a judgment in favor of the defendants, dismissing plaintiff's demands at his costs, plaintiff has appealed.
The facts leading up to this suit are as follows: On Saturday, May 26, 1973, at approximately 6 o'clock A. M., Norman Rogers and his wife brought their eight year old son to the emergency room of the Abbeville General Hospital for a head cut the child had received on a camping trip.
Upon admittance to the hospital Mr. and Mrs. Rogers requested that the nurse on duty call their family physician. Apparently the answering service informed the nurse to the effect that the doctor would not be in his officer until 9 o'clock A. M. and could be reached at that time.
Shortly thereafter the physician "on call" was contacted, notified that he was needed in the emergency room, and given details of the injury. The nurse on duty in turn informed the Rogers couple that he would be there shortly.
After waiting for approximately an hour the couple became anxious, noticed that Dr. Howard Alleman was at the hospital treating a patient, and asked the nurse if she would see if the doctor could examine their son. The doctor declined and the couple subsequently left the local hospital and proceeded to Lafayette General Hospital where the child was treated.
As a result of the incident the couple prepared a letter which was taken to the local newspaper and asked the editor if he would publish same. The letter was subsequently published on June 4, 1973, in the Abbeville Meridional under "Letters to the Editor".
The letter related the events which took place on the morning of May 26th. Specifically it also referred to the following conversations which allegedly transpired between the nurse on duty and Dr. Howard Alleman (following the Rogers' request *839 for him to see their child) and the conversation between the couple and the physician.
"Assumedly she asked him because she reported to us that he had said he couldn't give treatment to him because he was not on call. Not being satisfied with that we personally asked him as follows: `Dr. Alleman, would you please see our son, he's been hurt?' He replied, "I can't because he is the patient of the doctor on call.'"
In addition, the letter concluded with the following paragraph:
"We are fortunate !! So far, our son is convalescing and doing fine. BUT, a question of doubt remains. We have a lot of questions, too numerous to detail. BUT . . . . who appointed the three doctors in Abbeville to play God? BUT . . . what happened to the oath they took when they became medical doctors? BUT . . . how does one define an emergency, sight unseen ? BUT . . . when will someone die waiting? BUT . . . WHAT CAN WE DO?"
It is these portions of the letter which are at issue herein.
Doctor Alleman subsequently filed this defamation suit against the defendants (Mr. and Mrs. Norman L. Rogers) and Vermilion Publishing Corporation alleging essentially that defendants had made unwarranted, false, malicious, and libelous accusations in the article. Specifically it was contended that said accusations attacked his profession, his own personal skill and reputation, exposed him to disrepute and ridicule in the opinion of his colleagues, the medical profession as a whole, and the general public, and pictured him as one lacking in medical ethics, one who had a complete disregard of the welfare and health of his patients, and one who would allow a person to die without rendering medical aid.
Defendants, Mr. and Mrs. Rogers, answered, specifically pleading the truth of the matter published, lack of malice on their part, and the right to inform and advise the public of their concern for matters taking place at a public institution. The defendant newspaper pleaded the same defenses, in addition to the privilege of fair comment, good faith and reasonable belief in the truth of the matters published and discharge of its duty to inform the public by publication and discussion of news, criticism and comment on public matters, and to provide for the public a forum for the expression of views.
Following trial the district judge, in ruling for the defendants, gave the following written reasons for judgment which we adopt as our own.
"This suit for damages based on libel arises out of the publication, under "Letters to the Editor", of a letter written by Mr. & Mrs. Rogers to the Abbeville Meridional. The parties have stipulated that all the items in the five page, typed document were correct, except two portions set apart in brackets.
With regard to the first portion, it is the opinion of this Court that what was said is substantially true, namely, that Dr. Alleman declined to treat the Rogers' son in the emergency room of the Abbeville General Hospital after being requested to do so by his parents. The exact wording of what was said by the nurse, Mrs. Dronet, and Dr. Alleman as to why he declined to treat the boy are the only points of disagreement. The testimony of the parties indicates that no one could remember exactly what was said. The doctor and nurse might have said he declined to treat the boy because another doctor had been called and was on his way to the hospital, rather than what was printed, namely, that he declined treatment because the boy was the patient of the doctor on call. Nevertheless, this court finds that the charges contained in the portion of the letter *840 were substantially true, and that, for this reason, the defendants are exonerated from liability. Otero v. Ewing, 165 La. 398, 115 So. 633 (1938) (sic). Kennedy v. Item Company, Ltd., 197 La. 1050, 3 So.2d 175 (1941).[1]
The second portion of the letter involves a series of questions rather than narrative statements. It is the opinion of this Court that this portion, as well as the entire letter, falls with (sic) the ambit of fair comment and criticism. In Matassa v. Bel, 246 La. 294, 164 So.2d 332 (1964) the Court stated:
"In order to avail oneself of the rule of fair comment and criticism the publication must be one made `with an honest purpose, without malice, based on facts, * * * restricted to a man's acts or works' and, in addition, it `must not attack him in his private character nor convey imputations of an evil sort except so far as the facts, truly stated, warrant the imputation.' And for the publication to enjoy a qualified privilege, the statement must be prepared bona fide, with the view to preventing or punishing some public abuse, in which case it is considered as justified as a duty owed to society, providing it does not `meet the objection of having been made maliciously and without probable cause.' Madison v. Bolton, 234 La. 997, 102 So.2d 433, and the extensive authorities therein cited.'[2]
The testimony of the witnesses and the exhibits entered into evidence convince this Court that events within the Abbeville General Hospital and its emergency room are items of public concern.[3] Furthermore, this Court is convinced that the defendants acted with an honest purpose, without malice, based on facts, and with the view to preventing or punishing some public abuse.[4] As the undisputed *841 facts indicate, the boy was in the Abbeville Hospital emergency room for one hour and fifteen minutes with no treatment. Upon arriving at Lafayette General approximately fifteen stitches were taken and the boy's parents were advised to watch for symptoms of infection because of the time lapse. The cause for concern on the part of the parents was genuine and their criticisms motivated by concern that such practices exist and could be harmful.
For these reasons, the claim of the plaintiff is rejected at his cost." (Footnotes added by this Court of Appeal)
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.
NOTES
[1] See also: Deshotel v. Thistlewaite, 240 La. 12, 121 So.2d 222 (1960); Addington v. Times Publishing Co., 138 La. 731, 70 So. 784 (1916).
[2] On the conditional privilege of "fair comment" see also: Moresi v. Teche Publishing Company, Inc., 298 So.2d 901 (La.App.3rd Cir. 1974), writ refused 302 So.2d 309 (1974); Miller, Smith and Champagne v. Capital City Press, 142 So.2d 462, 473 (La.App. 1st Cir. 1962).
[3] The record reveals that numerous newspaper articles had been published, in the three month period previous to the alleged defamatory article herein, concerning complaints received by police jurors, in hospital board and police jury meetings, etc., about the operating procedures at the hospital and alleged lack of medical attention at the facility. Testimony at trial also substantiates that care at the hospital was a matter of immediate public concern.
[4] As to the basis for liability in defamation suits (whether the defendant-party is an individual or the media) our courts, prior to 1974, formulated the following necessary elements of proof. (1) publication, that is communication to some person other than the defamed, (2) falsity, (3) malice, actual or implied, and (4) resulting injury. See Rougeau v. Firestone Tire & Rubber Company, 274 So.2d 454 (La.App.3rd Cir. 1973); Sas Jaworsky v. Padfield, 211 So.2d 122 (La.App. 3rd Cir. 1968); Comment 28 La.L.Rev. 82 (1967). In June 1974 the U.S. Supreme Court handed down Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed. 2d 789 (1974), which provided in effect that the states could "define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual," as long as they "do not impose liability without fault". Gertz overruled the prior decision of Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) which had extended the New York Times standard of requiring a showing of "actual malice" to private individuals. See Notes 49 Tulane L.Rev. 685 (1975). Thus fault has also been mandated as an element of proof necessary to make actionable defamatory words about a private individual involved in matters of general or public interest: (i.e. not public official or public figure under New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1971)). See the recent decision of Carlton Wilson, Jr. v. Capital City Press, 315 So.2d 393, handed down by this court on June 30, 1975, where the fault element was applied. This writer dissented in that opinion, but only on a factual basis. The trial judge in the present case implicitly applied the fault doctrine and in effect found same lacking on the part of the defendants.