Lehrer v. Elmore.

CASE 9—PETITION ORDINARY—OCTOBER 20.

# Lehrer v. Elmore.

### APPEAL FROM GRAVES CIRCUIT COURT.

1. LIBEL.—A publication in a newspaper under the headlines of "Evidently Stolen," which stated that H. had hired a horse to a man for a special purpose to be returned at a certain time. and that it was not returned as promised, and that H. had concluded that he hired the horse in order to convert it to his own use, and that H. thought he could identify the man as L., is libelous, unless it was true that L. was in fact the man to whom the horse was hired.

2. DAMAGES.—The publisher of a libel should be held liable for all the damages which the injured party sustained thereby, including not only the injury to his character, but also for the injury to his feelings and for the mental suffering caused by the publication, and for such other damages as were the direct or necessary result of such publication; and if the same was known by the publisher to be false, he is liable for punitive damages.

D. G. PARK FOR APPELLANT.

ROBBINS & THOMAS FOR APPELLEE.

(Record and briefs not in the office).

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT:

This action was instituted in the Graves Circuit Court by the appellant against the appellee to recover damages on account of a libelous publication which was published in the Mayfield Mirror, of which paper appellee was owner and publisher. The defendant filed a general demurrer to the petition, which demurrer was properly overruled.

The answer admitted the publication, but denied that it was false, malicious or libelous; denied that he meant to charge that plaintiff had committed the crime of horse stealing, and that he did not charge the appellant with such crime.

The residue of the answer in substance undertakes to say that the facts stated in the publication were furnished by W. L. Hedge, and that he published them as matter of news and without malice or ill will towards appellant. The publication complained of is as follows:

### "EVIDENTLY STOLEN."

"Mr. W. L. Hedge hired a horse to a man, who said he wanted to go to Pottsville, last Tuesday, and said he would return that night. He did not return as promised, and Mr. Hedge concluded he had hired the horse in order to convert it to his own use. The fellow is a young man, and Mr. Hedge thought he could identify him as being a man named Lehrer, who has been in the saloon business at Cairo and who had his picture printed on an advertising card, one of which he left here last week with a butcher named Yopp."

There can be no question but what the publication complained of is libelous unless it was true that appellant was the man who had hired the horse, and there is no pretense that he had anything to do with the matter at all, nor is it material whether Hedge gave the information or not. Upon final trial the appellant recovered a judgment for one cent in damages, and his motion for a new trial having been overruled, he prosecutes this appeal.

The case of Riley v. Lee, 88 Ky., 603, determines that the publication of the article complained of was libelous. The opinion in that case reviews the authorities, and is an exhaustive discussion of the question. We quote

as follows from the opinion: "Also, in reference to publishing such writing without malice as a matter of news, the answer comes back that it is not lawful to bruit thither and yon defamation of a person's character merely to gratify a morbid appetite for such scandal; that nothing short of the truth of the matter published will be heard in justification of the .unwarranted liberties thus taken with a person's name; * * * that the press must not be the vehicle of attack upon the character of a person unless the attack is known to be true. If it is not known to be true, do not publish it." It is, therefore, manifest that the publication in question was libelous, and the demurrer properly overruled.

Appellant relied on several grounds for new trial, but chiefly on erroneous instruction, which is the only ground that need be considered.

The objectionable instruction is the following portion of instruction No 2: "But they can not award punitive damages as a punishment of defendant, but only such actual damages as will compensate him for the injury to his character."

It seems clear to us that the instruction is erroneous in limiting the recovery to the actual damages or injury to appellant's character. If such was the law, then it would be competent for the defendant to deny that the character of plaintiff had been injured, and the plaintiff, in order to recover, would have to show actual damages.

The law allows the plaintiff damages not only for tar-

nished reputation, but also for his injured feeling. 5 American & English Ency. of Law, 47, and note 1, and authorities there cited.

It may be conceded that punitive damages should as a rule not be awarded where the publication was at the time, upon reasonable grounds, believed to be true, but the proof in the case at bar did not warrant the court in taking the question of actual malice from the jury. So far as the plaintiff is concerned the injury to him is the same, whether or not the defendant believed the report true.    One definition given of malice by Mr. Webster is "a wanton disregard of the rights  or safety of others."

In 2 Bouvier, page 92, note 4, in speaking of torts or the  doing of acts injurious to another without a just cause, it is said:    "This term, as applied to torts, does not necessarily mean that which must  proceed from a spiteful, malignant or revengeful  disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind, not sufficiently cautious before it  occasions an injury to another.  Indeed in some cases, it seems not to require any intention in order to make an act malicious.    Where a slander  has  been published, therefore, the proper question for the jury is not whether the intention of the publication was to injure the plaintiff, but whether the tendency of the matter published was so injurious."

It could make no difference to plaintiff whether the defendant believed the libel to be true or not.    The injury consists in the publication, not in the intent of the

publisher, nor as to his belief or disbelief of the accusation.

It is true that there was proof conducing to show that a man calling himself Ed Lehrer had hired a horse of Hedge and failed to return it, but he had not represented himself as doing business in Cairo, nor had he left his business card with his picture on it, with Yopp, and the fact that plaintiff had stated his business and left his card with Yopp, instead of authorizing the belief that he was the thief, ought to have raised a doubt as to that fact for the reason that a person intending to steal would not be likely to furnish such complete and ready means of indentification.

We think that both reason and authority require that the publisher of a libel should be held liable for all the damages which the injured party sustained, thereby including not only the injury to his character, but also for the injury to his feelings, and for the mental anguish and suffering caused by the publication of the libel, and for such other damages as were the direct or necessary result of such publication; and if the publication was by the publisher known to be false, he would also be liable for punitive damages.

It appears that the libelous article was re-published in a paper in Paducah, where the plaintiff had once resided. He was in business in Cairo, and it would seem from the proof that he was seeking to establish trade in Mayfield, and the publication was so clear and explicit that all persons who knew plaintiff would necessarily know that he was the party accused.

The rule announced herein is not at all unjust nor harsh as to publishers of newspapers, for they are under no obligation to publish defamatory statements, and if they will steadfastly refuse to do so unless the statements are true, they will be in no danger of suits for damages, and will also thereby better serve the public, for then the public will know that the publications are entirely trustworthy.

It is an ancient maxim of the law that it is better that ninety and nine guilty persons should escape than that one innocent man should be punished.    It is also better that a thousand wrongs or misdeeds should be unpublished than that the character of one innocent person should be injured or his feelings lacerated.

It is true that after the appellant had come to Mayfield to investigate the charge that appellee published another statement, headed "Rectifying a False Report."    Said rectification is as follows:

### "RECTIFYING A FALSE REPORT."

"Ed. M. Lehrer was over here yesterday from Cairo to straighten a report which in some way connected him in a case of reported horse stealing.    It was stated in this paper last issue that W. L. Hedge had hired a horse to a man to ride out to the country, and the horse had not been brought back for several days after the man promised to return it, and Mr. Hedge naturally concluded the fellow had hired the horse with the intention to steal it. He gave his name to Mr. Hedge as Ed. Lehrer, and afterwards Mr. Hedge was talking of the

affair to Yopp, the butcher, and mentioned the name of the fellow who had got the horse, whereupon Yopp showed Mr. Hedge a business card with E. M. Lehrer's name and picture on it. Mr. Hedge remarked that it looked like the man who had got the horse. From this the report started connecting the Cairo Ed. Lehrer with the matter. Mr. E. M. Lehrer is doing business at Cairo, and looks like a gentleman, and we presume he stands well in the estimation of his acquaintances. He talked something like suing somebody for damage, but we failed to learn his final conclusion. We hope, however, this statement will set him in the proper light before the people here, and that there will be no further trouble."

But this rectification did not relieve the defendant from liability for the libelous publication, and perhaps contributed but little, if anything, toward repairing the wrong already inflicted.

For the reasons indicated the judgment of the court below is reversed and cause remanded, with directions to award a new trial and for proceedings consistent with this opinion.