CASE 46—LIBEL,—JANUARY 19, 1899.

# Louisville Press Co. v. Tennelly.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. LIBEL—JURISDICTION.—Under sec. 74 of the Civil Code, fixing the
   venue of actions for injury to the character of the plaintiff
   against a resident defendant in the county where the defendant
   resides, or in which the injury is done, an action for libel
   against a newspaper may be brought in any county where the
   paper circulates.
2. SAME—PLEADING.—In an action for libel it is not necessary to
   allege extrinsic facts for the purpose of showing the application
   to the plaintiff of the alleged defamatory matters.   Under sec.
   123 of the Civil Code it is sufficient to allege that the publica-
   tion was meant to, and did, refer to the plaintiff.
3. SAME—MALICE.—Malice in law is imputed to a person who does
   a wrongful act without just cause or excuse, and does not imply
   ill will or personal animosity.
4. SAME—INSTRUCTION.—In defining actual malice it is improper to
   add the abbreviation "etc." to the definition as "actual ill-will,
   hatred, etc.," but such impropriety is not reversible error, unless
   it appears that the defendant was actually prejudiced.
5. SAME—MEASURE OF DAMAGES.—The rule is well settled that the
   publication of a libel exposes the publisher not only to com-
   pensatory damages for the plaintiff's loss of business, but also

to a judgment for the mental suffering that the libel or slander inflicts upon the plaintiff, and if the publication is malicious, or made in reckless disregard of the rights of the plaintiff, the defendant is also liable for punitive damages.

6. SAME—DEFENSE—GOOD FAITH OF THE PUBLISHER.—It is no defense in law to an action for libel for the publication of defamatory matter in a newspaper that the publisher believed that the statements or charges made were true.

SWEENEY, ELLIS & SWEENEY FOR APPELLANT. (E. T. FRANKS AND H. R. PHILLIPS OF COUNSEL.)

1. The Daviess Circuit Court had no jurisdiction. Mitchell v. Ripy, 82 Ky., 516; Civil Code, secs. 72, 74; Watts v. Thomas, 2 Bibb, 458; Am. & Eng. Enc. of Law, vol. 13, p. 373; 4 B. & A., 143; Ward v. Smith, 6 Bing., 749; Shipley v. Todhunter, 7 C. & P., 680; Clegg v. Lafler, 3 Moore & Scott, 727; Fry v. Bennett, 28 N. Y., 324; Defries v. Davis, 7 C. & P., 112; Pollock on Torts, p. 4; Cooley on Torts, (2d ed.), 84; C. & O. S. W. R. R. Co. v. Heath's Admr., 87 Ky., 652; Peterson v. Western Union Telegraph Co., 33 L. R. A., 302.

2. The court erred in admitting incompetent testimony. In permitting the plaintiff to detail his loss of business from his books. Townsend on Slander, pp. 162, 541; Newell on Defamation, Slander and Libel, 863; Odgers on Libel and Slander, 304; Woodbury v. Thompson, 3 N. H., 104. If plaintiff was permitted to recover special damages without an allegation in his petition,, then the defendant was entitled to a bill of particulars. Clark v. Mansell, 6 Met. (Mass.), 373; Brown v. Calvert, 4 Dana, 219; Tilton v. Beecher, 59 N. Y., 176.

3. The court erred in instructing the jury. The plaintiff was not entitled to recover anything but compensatory damages, and mental distress does not enter as an element into such damages. Newell on Libel and Slander, p. 864; Swift v. Dickerman, 31 Conn., 285; Terillingly v. Wands, 17 N. Y., 54; Coffin v. Coffin, 4 Mass., 1; Wadsworth v. Treat, 43 Mo., 163; Lynch v. Knight, &c., 9 A. L. C., 598; Hawthorn v. Dawson, 3 C. & P., 196; Mahony v. Bedford, 132 Mass., 393; Sutherland on Damages, vol. 1, 730, 729; Screpts v. Reilly, 38 Mich., 23; Snyder v. Fulton, 34 Md., 128; s. c. 6 Am. Rep., 314; Evening News Assn. v. Tryon, 42 Mich., 548; Dorrah v. Ill. Cent. R. R. Co., 65 Mass., 14; s. c. 7 Am. St.

Louisville Press Co. v. Tennelly.

Rep., 630; Pierce on Railroads, 302; Johnson v. Wells, Fargo &
Co., 6 Nev., 224; Wyman v. Leavitt, 71 Me., 227; Greenleaf on
Evidence, vol. 2, sec. 267; Flemington v. Smithers, 2 C. & P., 292;
Bixby v. Dunlap, 56 N. H., 456; s. c. 22 Am. Rep., 475; Riley v.
Lee, &c., 88 Ky., 607; Lehrer v. Elmore, 18 Ky. Law Rep., 551;
Chapman v. Western Union Tel. Co. 90 Ky., 267; 5 Am. & Eng.
Enc. of Law; True v. Plumly, 36 Me., 466.  Instructions 4 and 5
given by the court were erroneous.  The court erred in refus-
ing instructions offered for the defendant.

4. The court erred in refusing to give the instruction asked for by
the defendant to the effect that if they should believe that the
substance of said article in so far as related to the plaintiff was
prior to and at the date of the publication publicly rumored in
Owensboro, Daviess county, Kentucky, and that the defendant
in good faith believed the statements in said article were true
when it published the same and published the same without
malice, and should also believe that the defendant was not
damaged thereby, they should find for the plaintiff only nominal
damages.  This instruction was more favorable to the plaintiff
than he had a right to ask. Williams v. Greenwade, 3 Dana, 434;
Eastland v. Caldwell, 2 Bibb, 21; Trabue v. Mays, 3 Dana, 138;
Parker v. McQueen, 8 B. M., 16; Harper v. Harper, 10 Bush, 447;
Briscoe v. McKee, 2 A. K. Mar., 372; Newell on Libel and Slan-
der, pp. 875, 882, 889; Civil Code, p. 168, note 3; Rice on Evi-
dence, vol. 2, sec. 396.

5. The court erred in adding to the definition of actual malice the
abbreviation, "etc."

6. The court erred further in failing to give the instructions asked
on behalf of the defendant defining the several kinds of dam-
ages, and their measure.  Mitchell v. Bradstreet, 116 Mo., 226.

MARTIN YEWELL AND REUBEN A. MILLER FOR THE APPELLEE.

1. Under sec. 74 of the Civil Code, the Daviess Circuit Court had
jurisdiction of the action.  Mitchell v. Ripy, 82 Ky., 516.

2. The general demurrer to the petition was properly overruled.
McGee v. Wilson, Litt. Selec. Cases, 187; Riley v. Lee, &c., 88
Ky., 603; Allen v. Wortham, 89 Ky., 485.

3. It was error on the part of the court below to overrule plaintiff's
motion to strike out certain evidential portions of the answer;
but, having overruled this motion, defendant should have been

required to furnish to the plaintiff the names of the parties with whom it was alleged in the answer the plaintiff had had similar transactions. Townshend on Slander and Libel, chap. 11; Newell on Defamation, Slander and Libel, sec. 2.

4. It was error to the prejudice of the plaintiff to give to the defendant the burden of proof and the conclusion of the argument.

5. The ground for new trial that the court erred in refusing competent evidence offered by the defendant is too general to be considered in this court.

6. There are two elements of damages involved in this suit; one is an injury to the character of the plaintiff as a man and a citizen, and the other is an injury to his character as an undertaker and embalmer. Any evidence bearing upon the measure of this injury was competent. Newell on Defamation, Slander and Libel, p. 864; Ingram v. Lawson, 6 Bing., C., 211; 8 Scott, 471; Mallory v. Pioneer Press, 26 N. W. Rep., 104; Cook v. Field, 3 Esp., 133; Evans v. Harris, 1 H. & N., 251; Odgers on Libel and Slander, p. 308; Townshend on Slander and Libel, chap. 8, secs. 179, 180, 181, 182, 183, 184; 2 Greenleaf on Evidence, sec. 420.

7. The court did not err to the prejudice of the defendant in its instructions. Lehrer v. Elmore, 15 Ky. Law Rep., 551.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

This was an action for libel, brought against appellant, who was the publisher of a newspaper, and published in its said paper the following: "FOUND AT LAST. The search for the meanest man on earth has been busily prosecuted for years, but I claim the proud distinction of having located him. He lives in Owensboro, but, strange to say, his fame has heretofore been confined to that town and immediate vicinity. He is an undertaker in the Daviess county capital, but, in addition to his undertaking establishment, he conducts a note-shaving business. In this latter respect he is known as the man who can collect any sort of a note, and also known as a business man who is inexorable in observing the cash-basis plan. Something over a year ago a poor man brought a dead daughter to

the undertaking establishment, to have the body embalm-
ed; intending to have the funeral the next day.  The mor-
row arrived, but the bereaved father had no money, and the
flint-hearted undertaker refused to give up the body, un-
less the expense of embalming was paid.  The father went
away, and has never been heard of since.  In the mean-
time the undertaker has kept the body of the child in a
back room, and uses it as an advertisement to demonstrate
the superiority of his embalming fluid."  This action was
instituted in the Daviess circuit court, and the appellant
was summoned in Jefferson county, which it appears was
the county of appellant's residence, and its place of busi-
ness, where it issued and printed the aforesaid newspaper.
A trial resulted in a verdict and judgment in favor of the
appellee for $500, and, appellant's motion for a new trial
having been overruled, it has appealed to this court.

A reversal is asked on several grounds, but the principal
ground relied on for reversal seems to be error of the
court in overruling appellant's demurrer to the jurisdic-
tion of the court.  In other words it is insisted for appel-
lant that the circuit court of Daviess county did not have
jurisdiction of the appellant; hence the demurrer to the
jurisdiction, it is argued, should have been sustained.  The
correctness of the judgment of the circuit court depends
upon the construction of section 74 of the Code of Practice.
It will be seen that the Code of Practice, from section 62 to
section 80, specifies or provides in what county the vari-
ous kinds of actions shall be brought.  Section 74 of the
Code reads as follows: "Every other action for an injury to
the person of the plaintiff, and every action for an injury
to the character of the plaintiff, against a defendant resid-
ing in this State, must be brought in the county in which

[24]

the defendant resides, or in which the injury is done." We are not aware that this section has ever been specially called in question, or construed by this court; but it seems that the bench and the bar have generally construed or understood the section to mean that the court of any county in which the paper containing the libelous article was circulated had jurisdiction to hear and determine an action for damages,—in other words, that the plaintiff was entitled to sue in any county in which the paper containing the libelous article was circulated,—and we have not been referred to any authority in conflict with such a construction of the Code *supra*. It may be true that the cause of action accrued to the plaintiff in Jefferson county so soon as the Commercial was printed, and placed in the mails in Jefferson county, but that fact does not necessarily preclude the plaintiff from maintaining his action in any county in which the injury to him was inflicted. It seems to us that the true construction and meaning of section 74 is that the plaintiff may institute his action in the county of defendant's residence, or in any county where he is injured by the publication of the libel. It will be seen from an examination of the sections preceding section 74 that there is no provision as to the venue of an action for an injury to the character of the plaintiff. It therefore follows that section 74 fixes the county or counties in which an action for the injury to the character of the plaintiff may be brought; and it seems clear to us that the action may be brought, at the option of the plaintiff, in the county of defendant's residence, or in any county in which the injury to his character has been inflicted. It results from the foregoing that the court properly overruled the special demurrer of the defendant to the jurisdiction of the Daviess Circuit Court.

It is alleged in the petition that the publication was meant to apply to, and did refer.to, the plaintiff. It is provided in section 123 of the Code that "in an action for libel or slander it is not necessary to state any extrinsic facts for the purpose of showing the application to the plaintiff of the alleged defamatory matter." It follows, therefore, that. the general demurrer was properly over- ruled.

Complaint is made by the appellant in respect to the orders and rulings of the court on the various motions in regard to striking out portions of the pleadings, and as to the specifications required; but we are of the opinion that no error occurred in respect thereto prejudicial to the substantial rights of the appellant.

Numerous exceptions and objections are urged against the admission and rejection of evidence on behalf of the appellant, as well as appellee, which objections and excep- tions are too numerous to mention; but we have carefully considered the same, and are of the opinion that no error prejudicial to the substantial rights of the appellant was committed in respect either to the admission or rejection of testimony.

Appellant insists that the court erred in giving the various instructions given, and also erred in refusing the instructions offered by appellant. The instructions given by the court are as follows: "(1) The court instructs the. jury that they should find for the plaintiff, unless they believe from the evidence that all of the charges contained in the publication complained of are, in fact or in sub- stance, proven to be true, as published. (2) If the jury find for the plaintiff, the measure of such finding should be such a sum as they believe from the evidence will reason- ably compensate the plaintiff for mental distress, loss or

injury to his character, if any proven, loss to his business, if any proven, occasioned by the publication complained of; and if the jury believe from the evidence that said publication was induced by actual malice on the part of the defendant toward the plaintiff, or a reckless disregard of the plaintiff's rights, they may, in their sound discretion, find, in ad dition to compensatory damages, such damages by way of punishment as they think proper, in all not exceeding the amount sued for, $50,000.    (3) The jury are further instructed that, if they should find damages to plaintiff's business they should only allow such as the evidence shows to be the direct or proximate result of the publication complained of.    (4) If the jury believe from the evidence that the whole publication complained of by the plaintiff in his petition is proven, in terms or in substance, to have been true, they should find for the defendant. (5) If, however, the jury believe from the evidence that all the facts of the alleged libel are not proven to be true, but that some part of them are so proved, in fact or in substance, they should consider such as are proven in mitigation of damages, if they find for the plaintiff.    (6) By 'compensatory damages' are meant such an amount in damages as will be to a complainant an adequate equivalent of the loss or injury sustained by him in a given case; in other words, as will pay him for his loss.    By 'punitive damages' are meant such damages as are given for the punishment of a party for a wrong or injury done or inflicted wrong- fully upon another.    By 'actual malice' is meant actual ill will, hatred, etc."    It seems to us that the instructions given contained a full and fair statement of the law appli- cable to the case on trial.    Some criticism is made by the appellant in respect to the "etc." in defining malice.    It may be that the expression "etc." should not have been

used in the instruction; but malice is so well understood by everybody that that addition to the other definition given to "malice" could not possibly have misled the jury or redounded to the injury of appellant.

The appellant offered eleven different instructions, all of which were refused by the court, and their great length renders it inexpedient to copy the same; but we are of the opinion that the court did not err in refusing the instructions offered by appellant.

It is said in Staub v. Van Benthuysen, 36 La. Ann. 469, that: "Every one who prints or publishes a libel may be sued by the party defamed, and to such action it is no defense that another wrote it, or that it was printed or published by the desire or procurement of another. Every sale or delivery of a written or printed copy of a libel is a fresh publication, and every person who sells a written or printed copy of it may be sued therefor; and the onus of proving that he was ignorant of its contents is on the defendant. . . . In giving currency to slanderous or libelous reports and publications, the party is as much responsible criminally and civilly as if he had written the defamation. . . The word 'malice,' when used in a civil or criminal pleading in cases of this kind, does not imply, much less mean, ill will or personal malice. Its legal sense is the wrongful act done without just cause or excuse. Malice is the imputation of the law from the false and injurious nature of the charge, and differs from actual malice or ill will, which latter may be proved to enhance the damages. The legal malice need not be proven. The law imputes it to the publisher of the libel from the act of the publication. Any publication which is false and defamatory exposes the publisher to damages in favor of the party aggrieved, printed or written slander being justly

considered more pernicious than verbal. The law holds the publisher responsible, as the instrument used for the dissemination of calumny whereby the character of any one may be blasted, or his business injured, or his social standing impaired. And it is not incumbent on the party assailed by falsehood and defamation to show malice against him on the part of the publisher, nor to prove that he has been injured by the publication."

·In Swift v. Dickerman, 31 Conn., 285, it was held that evidence is admissible in the enhancement of damages that the plaintiff suffered great anxiety and distress of mind by reason of the slander.

In Newell on Defamation, etc., (page 864), it is said: "Where words are spoken of a person, in the way of his profession or trade, so as to be actionable in themselves, the plaintiff may allege and prove a general diminution of profits or decline of trade, without naming particular customers, or proving whether they have ceased to deal with him."

In Mahoney v. Belford, 132 Mass., 393, it was held, in substance, that in an action of slander the mental suffering of the plaintiff constituted an element of damage.

In Lehrer v. Elmore, 18 Ky. L. R., 553, [37 S. W. 292], it was said: "The law allows the plaintiff damages, not only for tarnished reputation, but also for his injured feelings. . . . So far as the plaintiff is concerned, the injury to him is the same, whether or not the defendant believed the report to be true. One definition given of 'malice' by Mr. Webster is, 'A wanton disregard of the rights or safety of others.' In 2 Bouvier, Law Dict. p. 92, note 4, in speaking of charges or doing of acts injurious to another without just cause, it is said: 'This term, as applied to charges, does not necessarily mean that which

must proceed from a spiteful, malignant, or revengeful disposition, but conduct injurious to another, though proceeding from an ill-regulated mind, not sufficiently cautious before it occasions an injury to another.' Judged in some cases, it seems not to require any intention in order to make an act malicious.. Where slander has been published, therefore, the proper question for the jury is not whether the intention of the publisher was to injure the plaintiff, but whether the tendency of the matter published was so injurious. It can make no difference whether or not defendant believed the libel to be true. The injury consisted in the publication, not in-the intent of the publisher; nor as to his belief or disbelief of the accusation."

It seems to us that the rule is well settled that the publication of a libel exposes the publisher, not only to compensatory damages for the loss of business, but also to a judgment for the mental suffering that the libel or slander inflicts upon the plaintiff, and if the publication is malicious, or made in reckless disregard of the rights of the plaintiff, the defendant is also liable for punitive damages; and the instructions in this case go no further than to authorize the jury to find such damages, as hereinbefore indicated. The instructions offered by the defendant were in conflict with the principles announced herein, and were therefore properly refused. It may be remarked that it is evident from the verdict of the jury that no punitive damages were given.

It will be seen that the defendant admitted the publication of the article in question, and pleaded the truth of the same but it will be further seen from the testimony that defendant utterly failed to sustain the truth of the article in question; but it was permitted to, and did, introduce some proof tending to show that it, in good faith, believed

the statements to be true when published, which testimony ought not to have been allowed for any purpose, if at all, except to rebut the legal implication of malice. It may be further remarked that there was no excuse shown for the publication, for the reason that it is not incumbent upon a newspaper to publish the misdoings of a private citizen; and the public good, as well as the usefulness of the press, imperatively demand that no publication injurious to a citizen should ever be made, unless the publisher knows beyond a reasonable doubt that the statements or charges that it publishes are in fact true. It is a matter of public importance that all statements-printed and published in the press of the day should be entitled to full faith and credence, and no paper should publish any matter calculated to injure the feelings, business, or standing of any citizen, unless the same be true; and the mere fact that such publisher may believe that the statements or charges made are true is no defense in law or morals.

Judgment affirmed, whole court sitting.