**HARTMANN v. TIME, Inc.**

No. 9164.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 7, 1946.

Decided Sept. 23, 1947.

As Amended on Denial of Rehearing
Feb. 3, 1948.

Dàvid H. H. Felix and Felix & Felix, all of Philadelphia, Pa., for appellant.

Francis H. Scheetz, of Philadelphia, Pa. (Evans, Bayard & Frick, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS and McLAUGHLIN, Circuit Judges, and RODNEY, District Judge.

BIGGS, Circuit Judge.

The appellant, Hartmann, sued Time, Inc., publisher of the magazine "Life," alleging that he was libeled by certain material published by "Life" in an issue of that magazine dated January 17, 1944. The suit was filed in the Court of Common Pleas, Philadelphia County, on January 17, 1945 and was removed to the court below. The nature of the alleged libel is so fully and carefully set out in the opinion of the court below that it need not be repeated in detail here. See Hartmann v. Time, Inc., D.C., 64 F.Supp. 671. It is sufficient to state that Hartmann alleged, among other things, that "Life" is distributed "in all parts" of Philadelphia and the Commonwealth of Pennsylvania, throughout the United States, in most of the civilized countries of the world and to the armed forces of the United States overseas, that the alleged libelous material stated or inferred that he was associated with persons who had been indicted "for fascist activities" and that he was acting in a manner subversive to the security of the United States, that as a result of the alleged libel he lost his position as a professor at Columbia University and his earning power and reputation were damaged. We are not concerned with the question of whether the material published was libelous as a matter of law. This issue was not raised in the court below.

Before answer the defendant filed a motion for summary judgment [1] setting up the defense of statute of limitations. In its affidavits it asserted that the number of "Life," dated January 17, 1944, which contained the accused material, miscellaneous copies for purposes of replacement and for filling new subscriptions excluded, had been distributed to all news stands and subscribers except those in remote portions of the United States and in foreign countries not later than January 14, 1944. The plaintiff filed affidavits tending to deny these allegations.

Thereafter Hartmann attempted to file an amendment to his complaint, supporting his petition by affidavits. In his proposed [2] amendment Hartmann asserted that the alleged libel was republished in an issue of "Life" dated February 7, 1944. In this connection it appears that the plaintiff, by a letter to the editors of "Life," had protested the original material published in the issue of "Life" dated January 17, and the alleged republication of the libel in the number of "Life" dated February 7 consists of a statement by the editors printed immediately after Hartmann's letter to the effect that they believed they had dealt fairly with Hartmann and the movement of which he was a leader. The editors insisted that the movement which Hartmann was conducting was dangerous to our war effort and to our attempts to achieve a worthwhile peace. The question of whether this later material was actionable (like that first published) was not before the court below.

In an affidavit filed by the defendant there were set up the pleadings and judgments in certain suits filed by the plaintiff against the defendant respectively in the District Court of the United States for the District of Columbia and in the Supreme Court of New York, Part III, New York County. The pleadings and judgments in effect constituted a plea of res judicata in the case at bar and properly were so treated [3] by the court below.

In respect to the defense of the statute of limitations the court below held that the publication of an issue of a magazine such as "Life," widely distributed and consisting of thousands of copies,[4] can give rise to but one cause of action; that the statute of limitations must be deemed to run from the date of the publication, which was found to be January 14, 1944, and that issuance of

[1] Pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c.

[2] Subsequently denied by the court below as appears from its opinion, 64 F. Supp. at pages 680 et seq.

[3] It will be noted that matter in support of the defense of res judicata is set forth in the defendant's motion. See

Federal Rules of Civil Procedure, rule 8(c), 28 U.S.C.A. following Section 723c. Formal pleas have been abolished by the Rules and a defense of this kind may be raised either by motion to dismiss or in the answer.

[4] It appears that each issue of "Life" consisted of more than 3,900,000 copies.

additional copies for replacement purposes or to fill new subscriptions, can go only to the measure of damages but can create no new cause of action; that the publication of the issue of "Life" dated February 7, 1944 could not be related back to the original publication of "Life" dated January 17 but constituted a new publication which also was barred by the statute of limitations of Pennsylvania.

In respect to the plea of res judicata the court below held that the judgments in the suits respectively in the District Court for the District of Columbia and in the Supreme Court of New York, New York County, barred the plaintiff's suit in Pennsylvania.

Upon reading the opinion below it will be observed immediately that in its decision respecting publication the court departed from the conventional law of libel. There is much authority to the effect that each time a libelous article is brought to the attention of a third person a new publication has occurred; that each publication is a separate and actionable tort; and that each time a newspaper or magazine, containing libelous material is sold or distributed a new publication has occurred and a fresh tort has been committed, which, defenses aside, is actionable.[5] The court below, contrasting the circumstances which gave rise to the old common law rule with the new and changed conditions created by magazines and newspapers with national circulations, concluded, supra 64 F.Supp. at page 679, "The rule of law to be applied in such circumstances is that the one issue of a newspaper or magazine, although it consists of thousands of copies widely distributed, gives rise to one cause of action,

there being but one publication, and the statute of limitations runs from the date of the publication. The number of copies is considered as aggravating the seriousness of the publication, and therefore, being evidence of the extent of the injury, goes only to the matter of damages.[6] * * * In Pennsylvania the number of copies is taken into consideration in assessing damages[7] * * *."

The court below went on to state, "A careful examination of the cases leads to the conclusion that the decided weight of authority in this country is, where large distributions of published matter are involved, that the cause of action accrues, for the purpose of the statute of limitations, upon the first publication, when the issue goes into circulation generally." The learned District Judge then concluded that he was in agreement with this rule which, for the purpose of convenience, we will designate as that of "single publication." He held also that the miscellaneous copies of the issue of "Life" dated January 17, 1944, sent out by the publishers by way of replacement of damaged copies or in satisfaction of new subscriptions, were not to be considered as tolling the bar of the statute of limitations since these copies were part of one original publication.

It will be observed that though the primary question presented for consideration under this aspect of the case at bar is the application of the Pennsylvania statute of limitations, an underlying and far-reaching question of substantive law is involved. The complaint alleges, as we have stated, that publication took place in Philadelphia, in the Commonwealth of Pennsylvania, in civilized foreign nations and among the

---

5 This law is summed up in the Restatement, Torts, § 578. See in particular Comment (b).

See also Newell, The Law of Slander and Libel, 4th Ed. pp. 236–237, § 192, and Odgers on Libel and Slander, 5th Ed., p. 166.

6 Citing, inter alia, Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, at page 196, 37 A.L.R. 898; Winrod v. McFadden Publications, D.C.N.D. Ill., 1945, 62 F.Supp. 249, 250; Forman v. Mississippi Publishers Corporation, 1943, 195 Miss. 90, 14 So.2d 344, 347, 148 A.L.R. 469; Backus v. Look, Inc., D.C.

S.D.N.Y., 1941, 39 F.Supp. 662; Cannon v. Time, Inc., D.C.S.D.N.Y., 1939, 39 F. Supp. 660; Means v. MacFadden Publications, D.C.S.D.N.Y., 1939, 25 F.Supp. 993; Wolfson v. Syracuse Newspapers, Inc., 1938, 254 App.Div. 211, 4 N.Y.S.2d 640, affirmed per cur. 1939, 279 N.Y. 716, 18 N.E.2d 676; and Fried, Mendelson & Co. v. Edmund Halstead, Ltd., 1922, 203 App.Div. 113, 196 N.Y.S. 285.

7 Citing Chambers v. Philadelphia Inquirer, 1930, 14 Pa.D. & C. 421; Reed v. The Patriot Company, 1939, 35 Pa. D. & C. 466.

armed forces of the United States overseas. It appears from the defendant's affidavits that the contents of the issue of "Life" dated January 17, 1944 was prepared by an editorial staff in New York City and was printed in Philadelphia and Chicago; that distribution of the magazine to news stands or subscribers began in Chicago on January 10 and in Philadelphia on January 11, 1944. If the publication had not extended beyond Pennsylvania it is obvious that the plaintiff's cause of action could have arisen only in that State.[8] The smaller part of the issue, however, was published in Philadelphia; the larger part, in Chicago. We have, therefore, applying the rule laid down by the court below in all its strictness, at least two places of publication occurring respectively in two separate States and on successive days. Indubitably it was the intention of the defendant to cause the accused issue of "Life" to go into every State of the Union and to nations and to members of the armed forces overseas for otherwise the defendant would not fulfill its contractual obligations.

▮ Let us assume, as is not unreasonable, that the accused issue of "Life" reached England one week after January 14. Whether the plaintiff would have a cause of action against the defendant in England would depend on the law of England and not on that of Pennsylvania or Illinois. This conclusion is pertinent in respect to any cause of action which the plaintiff may have in any of the States of the United States or in a foreign country. The plaintiff's statement of claim is not limited to Philadelphia, or to Pennsylvania, though those localities are designated as places of publication. The statement of claim does not limit the accrual of the cause or causes of action to Illinois or to any other State of the United States or to any foreign country. The defendant has not availed itself of any of the means supplied by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to compel the plaintiff to draw out the allegations of his complaint to the end that the situs of the tort or torts alleged may be restricted to Illinois or to Pennsylvania or to any other state. See Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 254. Indeed, the defendant has not sought to impose, or agreed to the imposition of any such limitation upon the scope of the plaintiff's pleadings as appears from note 8 supra. We, therefore, for the purposes of the instant appeal, must treat the allegations of the complaint as to the places where publication occurred as covering the United States and the civilized countries of the world.

▮ The suit at bar, commenced in the Court of Common Pleas of Philadelphia County, was removed by reason of diversity to the court below. The rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, governs, and, as we have already indicated, the law of the place or places, if any, where the cause or causes of action accrued, governs in the creation of substantive rights. An examination of the laws of libel of the States of the United States shows a distinct cleavage. Some of the States, notably Alabama and New York, were the principal sponsors of the rule of the "single publication" rule laid down by the court below in the disposition of the instant case. See the decision of the Supreme Court of Alabama decided in 1921

---

[8] In this connection we observe that the plaintiff asserts before this court, as he did before the court below, that in the action at bar he seeks to recover for the damages which he alleges he suffered within the Commonwealth of Pennsylvania. In his brief in this court it is stated at pp. 14–15: "This case was begun by the plaintiff in the Common Pleas Court of Philadelphia County—it asks damages for loss of reputation suffered in Pennsylvania and particularly in Philadelphia County. Consequently the harm for which he seeks redress is the harm done in Pennsylvania. Paragraphs 6 and 7 of the Complaint * * * specifically set this forth."

It must be pointed out, however, that the court below, applying the doctrine of res judicata in the defendant's favor, rejected this assertion or "concession" of the plaintiff and took the position that the reach of the tort alleged in the complaint in the suit at bar was similar to that set up in the New York County and District of Columbia complaints. We think that the ends of justice require us to disregard the plaintiff's "concession" if it be such, and decide the case upon the reach on the pleading and the affidavits as did the court below.

in Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A.L.R. 898, and that of the Supreme Court of New York, Appellate Division, in Wolfson v. Syracuse Newspapers, 254 App.Div. 211, 4 N.Y.S.2d 640. But other States adhere to the older rule that each time a libelous article is brought to the attention of a third person, a new publication has occurred and that each publication is a separate tort. See the authorities cited in note 5 supra. Texas clearly is in this category, Renfro Drug Co. v. Lawson, 1942, 138 Tex. 434, 160 S.W.2d 246, 146 A.L.R. 732, as probably are Kentucky, Louisville Press Co. v. Tennelly, 105 Ky. 365, 49 S.W. 15, and Washington, Holden v. American News Co., D.C.E.D.Wash., 1943, 52 F.Supp. 24. Such actions are transitory in their nature and may be sued on in Pennsylvania. See 17 R.C.L. Section 120, p. 370. It is unnecessary to categorize the laws of the other States of the United States except as hereinafter set out. This is a matter which may be gone into on remand. The laws of foreign countries, of course, must be proved or come to the apperception of the court in some other recognized manner. See Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 151 F.2d 784, 793.

■■ We entertain no doubt that under the law of Illinois [9] a cause of action accrued to the plaintiff by reason of the publication in Chicago of the issue of "Life" dated January 17, 1944.[10] We think it is clear also that the law of Illinois brings that State into the category of States first referred to, the law of which holds that a single issue of a magazine constitutes but one publication and creates a single tort. We base this conclusion on the decision of the Circuit Court of Cook County, Illinois, in McGill v. Time, Inc., handed down on March 23, 1945.[11] We are also of the opinion that under the "single publication" rule the Illinois publication of the accused issue engrossed, as it were, the Pennsylvania publication. The Pennsylvania law permits such a conclusion as does that of Illinois.

See in particular the terms of the statute referred to in note 9 supra.

■ What is the substantive law of Pennsylvania? Of that, we can find but a chemical trace. We think that it is suggested by such decisions as Bausewine v. Norristown Herald, 1945, 351 Pa. 634, 641, 41 A.2d 736, 740; Sarkees v. Warner-West Corp., 1944, 349 Pa. 365, 37 A.2d 544; M'Corkle v. Binns, 1812, 5 Binn., Pa., 340; Reed v. The Patriot Company, 1939, 35 Pa. D. & C. 466; and Summit Hotel Co. v. National Broadcasting Co., 336 Pa. 182, 196, 8 A.2d 302, 309, 124 A.L.R. 968. We conclude that the courts of Pennsylvania would follow the Alabama and New York rule of one issue constituting a single publication and a single libel; in short, what we have designated as the "single publication" rule. We so hold.

We think that the rule enunciated by the court below, the so-called "single publication" rule, is the preferable one and is recommended both by logic and by public policy. Public policy must regard the freedom of the press and while the law must exact penalties for libel the instruments of free and effective expression, newspapers and magazines which are published on a nationwide basis, should not be subjected to the harassment of repeated law suits. Were we free to decide this question under the laws as it existed prior to the decision in Erie R. Co. v. Tompkins, supra, we would have decided it as did the court below. The impact of the cited case is such, however, as in our opinion to permit no other conclusions than those which we have expressed.

■ What is the Pennsylvania conflict-of-laws rule when publication of defamatory material takes place both within and without the State of Pennsylvania? See Klaxon Co. v. Stentor Electric Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. As we have stated, we believe that the courts of Pennsylvania will follow the "single publication" rule as a matter of Pennsylvania tort law. This does not mean, however, that the Pennsylvania courts will not refer the

---

[9] See Smith-Hurd Stat.Ill. c. 38, § 402, defining the tort, libel.

[10] The Illinois act relating to "jurisdiction" and libel, Smith-Hurd Stat.Ill., c. 38, § 707a, is of course inapplicable under the circumstances of the case at bar.

[11] No opinion for publication. No. 44C5903, in the Circuit Court of Cook County.

respective foreign publications to the appropriate foreign laws. The contrary is true. See Bayuk Bros. v. Wilson Martin Co., 81 Pa.Super. 195, and Sudol v. Gorga, 346 Pa. 463, 465, 31 A.2d 119, 120, wherein it was held that the cause of action is created by the law of the State where the tort took place. See also Klumph v. Dunn, 66 Pa. 141, 146, 5 Am.Rep. 355, in which the Supreme Court of Pennsylvania addressed to itself the inquiry " * * * to what law are the courts to refer to ascertain whether the offense charged is of this character [slander] ? Upon every principle of reason and policy the answer seems to be the law of the country where the words are spoken." It follows, therefore, that under the Pennsylvania conflict-of-laws rule the plaintiff was entitled, other questions aside, to maintain in the court below the causes of action which arose in those States which do not follow the "single publication" rule as well as the cause of action which arose in Illinois, the State following the "single publication" rule in which publication was first made, that first publication "engrossing," as we have stated, the later Pennsylvania one.

We come now to the Pennsylvania statutes of limitations.[12] There are two statutes which, in effect, form one statute of limitations and thereby present some difficulties of interpretation. They are section 1 of the Act of March 27, 1713, 12 P.S. Pa. § 31, which provides inter alia that actions on the case for words must be brought "within one year next after the word spoken, and not after," and section 35 of the Act of April 25, 1850, 12 P.S. Pa. § 32, which extends the earlier Act "to all cases of slander or libel, whether spoken, written or printed."

The Pennsylvania statutes construed together are capable of diverse interpretations. One view would support a conclusion that the period of limitation begins to run when the accused words are "printed." The other would require not only printing but "publishing," using that word in the legal sense of making the libelous material known to some person not privileged. The

latter conclusion is probably the correct one for the Legislature of Pennsylvania can scarcely have intended the mere printing of a libel, without the publishing of it, to start the limitation period running. We deem it unnecessary to resolve this question for taking January 10 as the day when the accused issue went into general circulation in Illinois (the date specified certainly being later than the day on which the issue was printed) we cannot doubt but that the magazine was read by persons not privileged in Illinois prior to January 17, 1944.

We are aware that the plaintiff makes the argument that the defendant's affidavits do not show that there was a reading of the accused material prior to January 17, and that since there is no proof of publication in the legal sense prior to that date, the motion for summary judgment pursuant to Rule 56 should not have been granted. We are not willing to dispose of the motion on such a narrow ground. We cannot believe, in view of the great number of magazines which comprised the issue, that "Life" dated January 17 was not read by persons not privileged within the two or three days which followed its very widespread distribution. To hold otherwise would be totally unrealistic and would inflict a wooden and a senseless interpretation on Rule 56.

The Pennsylvania statutes of limitations referred to will bar the "single publication" cause of action arising in Illinois, the only cause of action arising under the "single publication" rule, because section 1 of the Pennsylvania Act of June 26, 1895, 12 P.S. Pa. § 39, which provides that when a cause of action is fully barred by laws of the State in which it arose, such bar shall be a complete defense to an action brought in any of the courts of Pennsylvania. Illinois has a statute, Smith-Hurd Stat. Ill., c. 83, § 14, which states that actions for libel shall be commenced within one year next after the cause of action accrued. We hold therefore that the plaintiff's cause of action arising in Illinois, a State which follows the "single publication" rule, is barred by the Pennsylvania statutes of limitations.

---

[12] We think that any question that the Pennsylvania statutes of limitations are to be applied in the suit at bar is resolved by Guaranty Trust Co. v. York, 326 U.S. 99; 108–112, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

■ Not so as to the plaintiff's causes of action, declared on in the complaint, arising in those States of the United States following the older rule, that law which holds that each time a magazine containing libelous material is sold or distributed a new publication has occurred. See note 5 supra. The defendant's affidavits, on which the motion for summary judgment was based, do not put any limitation of time when the publications under that rule of law were completed; indeed, it is obvious from the very nature of the publications that the affidavits could not do so. It follows therefore that the court below erred in granting the motion for summary judgment insofar as these causes of action are concerned.

■ As to the publication of the issue of "Life" dated February 7, 1944, hereinbefore referred to, we conclude that that publication was separate, distinct and apart from any publication of the issue dated January 17, 1944. For this reason the later publication or publications may not be related back, as the plaintiff urges, to the earlier issue. The publication of the issue of "Life" of February 7 is, however, subject to the same rules of law as the issue dated January 17. Those rules need not be repeated again at this point of the opinion.

■ What we have said disposes of the respective contentions of the parties as to the miscellaneous copies of the issues of January 17 and February 7. Obviously under the law of those States which follow the "single publication" rule the miscellaneous copies are pertinent only to the issue of damages. In those States which follow the older rule of law, referred to in our note 5, the distribution of each of the miscellaneous copies will be deemed to create a new cause of action.

We turn now to the plea of res judicata asserted by the defendant. A brief recapitulation of some [13] of Hartmann's suits against "Time" is necessary in order that the exact nature of the plea may be understood. Hartmann's suit in the District Court of the United States for the District of Columbia was filed on January 17, 1945. The complaint in that suit contains substantially every pertinent allegation of the complaint in the suit at bar, the alleged libel of February 7 being offered to the District of Columbia complaint as an amendment as in the suit at bar. A motion for summary judgment based on the statute of limitations of the District of Columbia, D.C.Code, Title 12, Section 201, was offered and supported by affidavits substantially similar to those filed in the court below. After argument and consideration of the motions and affidavits the District Court of the United States for the District of Columbia dismissed the action "on the merits." Thereafter Hartmann, as we have just stated, moved to amend the complaint by inserting therein the alleged libel of February 7, for a new trial and for relief from the judgment against him. See Rules 59(b) and 60(b). The motion was denied. An appeal was taken to the United States Court of Appeals for the District of Columbia. The appeal was dismissed, the mandate of the United States Court of Appeals for the District of Columbia coming down on December 21, 1945. Insofar as the record shows no application was made to the Supreme Court for certiorari.

Hartmann's suit in the Supreme Court of the State of New York, New York County, was commenced on February 21, 1945 and the allegations of his complaint were substantially similar to those of the complaint in the District of Columbia as well as those of the complaint in the case at bar. A motion to dismiss was filed bottomed on the New York statute of limitations, Civil Practice Act, N.Y., Section 51, subd. 3, supported by affidavits of like tenor to those filed in the District of Columbia and in the case at bar. The Court dismissed the complaint on April 24, 1945. Thereafter an amended complaint, setting forth the alleged libelous publication of February 7, was filed by Hartmann. The Court dismissed the amended complaint on October 26, 1945, Sup., 60 N.Y.S.2d 209. Hartmann appealed to the Appellate Division, 271 App.Div. 781, 66 N.Y.S.2d 151, which affirmed the judgment of the lower court. The Court of Appeals of New York denied review, 296 N.Y. 1058, 71 N.E.2d 777.

Hartmann filed suit in the Superior Court of the Commonwealth of Massachusetts,

---

[13] We understand that he has brought six separate suits.

Suffolk County, on March 5, 1945. His original complaint was like that filed by him in the District of Columbia, in New York County and in the case at bar. By amendment he added a second count which, inter alia, set up the alleged libelous publication of February 7, 1944. The defendant answered, setting up the statute of limitations of Massachusetts, Gen.Laws Mass.(Ter. Ed.) 1932, c. 260, § 4. Thereafter it amended its answer to include the equivalent of a plea of res judicata based on the judgment against Hartmann in his suit in the District of Columbia. Later, it amended its answer again to set up the equivalent of a plea of res judicata based on the judgment rendered against Hartmann in the New York County suit. In the same amendment, however, the defendant pleaded that the action in Massachusetts was brought by Hartmann upon a cause of action which was barred "by the laws of the State of New York while the plaintiff resided in the State of New York, wherefore this action is barred by the Statute of Limitations set forth in General Laws (Ter.Ed.) Chap. 260, sec. 9." The statute referred to in the quotation is set out in the margin [14] and provides among other things that the Massachusetts statute of limitations will run against a non-resident as against a resident when the non-resident brings suit in Massachusetts, the period running against the non-resident as if he had resided in Massachusetts from the time of the accruing of the cause of action. Thereafter the court made an order directing the pleas of res judicata and statute of limitations be determined in *limine*. It appears from the record in the Massachusetts suit that the ensuing judgment in favor of Time, Inc., entered on July 29, 1946, may have been founded either on a jury verdict, rendered on February 25, 1946, barring suit, based on the Massachusetts statute of limitations, or upon the decree of the Superior Court of Suffolk County, Massachusetts on the plea of res judicata, filed on the same day or on both jury verdict and decree of the court. What transpired in the Massachusetts proceeding is far from clear on the record now before us.

The court below pointed out that the plaintiff contended that he sued in each jurisdiction only for the tort committed therein and the learned District Judge properly, we think, rejected that contention. As has been stated the respective complaints in the District of Columbia, in New York County and in the case at bar are substantially identical. The defendant contends that any and all causes of action which the plaintiff has or can assert are res judicata because there is identity of subject matter of the suits, of the parties thereto, and final dispositions of the plaintiff's cases by judgments in favor of the defendant. The defendant takes the position that judgments based on the bar of statutes of limitation, viz., the District of Columbia and New York County judgments, are adjudications on the merits, citing, inter alia, United States v. Oregon Lumber Co., 1922, 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261, and other authorities such as Fulton Iron Works v. Riggin, 1883, 14 Mo.App. 321. It also cites decisions of the Supreme Court of Pennsylvania in Re Metzger's Estate, 1913, 242 Pa. 69, 79, 88 A. 915, 918; Jones v. Costlow, 1946, 354 Pa. 245, 253, 47 A.2d 259, 263; Federal Land Bank of Baltimore v. Putnam, 1944, 350 Pa. 533, 538, 39 A.2d 586, 588; and In re Wallace's Estate, 1934, 316 Pa. 148, 153, 174 A. 397, 399. The defendant goes further, however, and asserts that the Full Faith and Credit Clause, Article IV, Sec. 1, of the Constitution of the United States, bars Hartmann's claim.

The first question presented for our determination is whether the plea of res judicata, asserted in the Court below, must be governed by the law of the State of the

[14] Gen.Laws Mass.(Ter.Ed.) 1932, c. 260, § 9. "Suspension in case of non-resident defendant. * * * If, when a cause of action hereinbefore mentioned accrues against a person, he resides out of the commonwealth, the action may be commenced within the time herein limited after he comes into the commonwealth; and if, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth, the time of such residence shall be excluded in determining the time limited for the commencement of the action, but no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein."

forum or by federal procedural law. Of course the defense of res judicata, ordinarily is pleaded as an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure but this is a mere matter of form. See Moore's Federal Practice, Vol. 1, pp. 570-571. It has been held by the Supreme Court that a federal district court must follow the conflict-of-laws rule of the State in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., supra, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. In Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645, 144 A.L.R. 719, the Supreme Court made a somewhat similar ruling in respect to burden of proof. In Guaranty Trust Company v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, it was held that in diversity cases a district court of the United States must apply the statute of limitations of the forum. In Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 662, the Supreme Court stated categorically that a district court of the United States is a court of the State in which it sits insofar as diversity cases are concerned and "must follow State law and policy." [15] The Angel case does not aid the defendant in the issue res judicata. Insofar as the District of Columbia and New York County suits were concerned, disposition was effected upon the respective local statutes of limitations. No federal question was involved. The impact of the Angel decision on this point in the case at bar is merely by way of the dictum which we think persuasive, that the court below and we ourselves must follow the law and policy of Pennsylvania in respect to the plea of res judicata.

The law and policy of Pennsylvania in respect to a plea of res judicata is fully settled. It is embodied in the decision of the Supreme Court of Pennsylvania in Re Wallace's Estate, supra, and in Federal Land Bank of Baltimore v. Putnam, supra. It is to the effect that a plea of res judicata will bar an action when a court of competent jurisdiction has determined a litigated cause on its merits, and not otherwise. See Restatement, Judgments, § 49, and Comment. See also the recent case of In re Philadelphia Electric Co., 1945, 352 Pa. 457, 43 A.2d 116.[16] It follows that the plea of res judicata set up by the defendant in the instant case fails in respect to the judgments rendered by the District Court of the United States for the District of Columbia and by the Supreme Court, New York County.

We come now to the question whether the Full Faith and Credit Clause, Art. 4, § 1, requires us to treat the Massachusetts judgment as barring Hartmann's claim in the light of the doctrine of res judicata. We will assume arguendo that the judgment rendered in Massachusetts was erroneous because as indicated a judgment rendered on the ground of the statute of limitations usually is not a bar to a subsequent suit.[17] Warner v. Buffalo Drydock

---

[15] Bullington sued Angel in the Superior Court of Macon County, North Carolina, to recover the deficiency on notes which had been secured by a deed of trust. Angel asserted the North Carolina anti-deficiency statute, Mitchie's Code 1939, § 2593(f), barred Bullington's suit. Bullington asserted that the statute was unconstitutional under federal tests, and the Superior Court and Supreme Court of North Carolina decided that the statute constituted a bar. Bullington did not appeal but brought a new suit in the District Court of the United States for the Western District of North Carolina. Angel pleaded in bar the judgment in the North Carolina suit. The Supreme Court of the United States held that "The 'merits' of a claim are disposed of when they are refused enforcement."; that since Bullington could have brought the validity of the North Carolina statute to

test before the Supreme Court of the United States by appeal from the decision of the North Carolina Supreme Court but had not done so, he could not try the question again in the District Court of the United States which was a court of the State of North Carolina when a diversity case was at bar.

[16] In re Philadelphia Electric Co., 352 Pa. 457, 463, 464, 43 A.2d 116, 119, Mr. Justice Jones stated:

"A statute of limitations provides a procedural limitation but does not deal with substantive rights."

[17] Although the judgment rendered in the District of Columbia stated that such proceedings were on the merits the Massachusetts court could look behind the judgment and ascertain the true reason for the judgment. Goddard v. Security Title Insurance & Guarantee Co., Cal. Sup., 1938, 83 P.2d 24; Lower v. Froe-

Co., 2 Cir., 1933, 67 F.2d 540. The reason for this is that such a decree does not decide that Hartmann's claim was extinguished but only that he could not sue in the District of Columbia because of the local statute of limitations. Cf. United States v. Oregon Lumber Co., supra. The question then is: What does a judgment on a plea of res judicata establish? The answer is that the plea asserts that the former judgment bars the action itself. Hornsby v. Rude, Tex.Civ.App., 1930, 33 S.W.2d 487; Zarsky v. Moss, Tex.Civ.App., 1946, 193 S.W.2d 245; Kralick v. Shuttleworth, 49 Idaho 424, 289 P. 74; McFarlane v. Griffin, Tex.Civ.App., 1935, 80 S.W.2d 1100, are all to that effect. Also see Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. The fact that the court in Massachusetts may have erroneously [18] applied the doctrine in this particular case is immaterial since it is now settled that a judgment must be given full faith and credit, even though erroneous, if there was jurisdiction. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141. And it is settled also that it is the judgment in the proceedings latest in time which is the one that must be given the full faith and credit. Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. Thus Hartmann's position is not aided by reference to the first judgment since the proceedings in Massachusetts were later in time. In Angel v. Bullington, supra, there was, we think, a somewhat analogous situation. In that case the first judgment against Bullington may perhaps have been in error in that the public policy of the forum was not an adequate reason for denying enforcement of a cause of action arising under the law of a sister State. McKnett v. St. Louis & S. F. Ry. Co., 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227, presents a somewhat closer analogy despite the fact that the basis of the decision lies in the application of the Privileges and Immunities Clause (Article IV, Sec. 2) rather than in the orbit of the Full Faith and Credit Clause. But in any event under Angel v. Bullington, once the question had been decided in a litigation between the parties, even though the decision was erroneous, the issue could not be relitigated in a subsequent suit between them. The Supreme Court of the United States has adopted the policy of terminating litigation after a single suit between the same parties. See 49 Yale L.J. 959.

It follows that if the Massachusetts judgment in favor of Time, Inc. was based on a determination by the Massachusetts court that either the judgment of the District Court of the United States for the District of Columbia or that of the Supreme Court, New York County (though these judgments in fact were bottomed on the respective statutes of limitations of the two jurisdictions) barred Hartmann's Massachusetts action, the Full Faith and Credit Clause will require the dismissal of the instant suit. But this court, of course, has no power to receive evidence of foreign judgments. In different circumstances and for the purposes of expedition we might presently consider the effect of the Massachusetts judgment. But possible consideration is hindered by the condition of the Massachusetts record now offered for the first time in this court. For example, the docket entries seem to be incomplete and other parts of the record may well require amplification or explication. It may be necessary for the court below to receive evidence aliunde as to the exact grounds on which the Massachusetts judgment in favor of Time, Inc. was rendered. That such a course is required under certain circumstances is shown, we think, by such decisions as Bissell v. Spring Valley Twp., 124 U.S. 225, 232, 8 S.Ct. 495, 31 L.Ed. 411, and In re Julius Bros., 2 Cir., 217 F. 3, 6, L.R.A.1915C, 89. See also Judgments, 30 Am.Jur. § 208. The authority last cited sums up the matter as follows: "Where there are two issues in a case, upon either of which a judgment may rest,

---

lich, 1921, 151 Minn. 552, 185 N.W. 940. The decision in the District of Columbia cannot of its own force preclude an examination as to whether the judgment was on the merits. 25 Va.L.Rev. 494 (1939).

[18] If it, in fact, did hold that a judgment rendered on the basis of the statute of limitations bars a future action on that cause of action.

one going to the merits and the other not, its disposition is generally considered as resting upon the latter, so that the merits remain unadjudicated, unless the judgment appears to have been upon the merits."

The judgment will be vacated to the extent indicated and the cause will be remanded for further proceedings in conformity with this opinion.

The order denying the plaintiff's motion to amend his complaint will be set aside. The attempted amendment states new causes of action under the principles of law hereinbefore elucidated based on the publication dated February 7, 1944. These causes of action may be disposed of appropriately with the remaining causes of action as indicated arising by reason of the publication dated January 17, if that be necessary. It would be appropriate, we believe, if and when the record of the Massachusetts suit be offered to the court below, for that tribunal to try first the issues, if any, presented by the Full Faith and Credit Clause. The procedure to be followed, however, is one which must rest within the sound discretion of the trial court.